[Civ. No. 2021. Fourth Appellate District.—October 7, 1937.]

MARK A. McCLELLAND, Appellant, v. O. N. SHAW et al., Respondents.

Harry W. Horton and George R. Kirk for Appellant.

A. C. Finney for Respondents.

MARKS, J.—This is an appeal from an order denying plaintiff's motion to issue execution after the lapse of five years from the entry of judgment.

On August 8, 1930, in the Superior Court of Imperial County, plaintiff was given default judgment against defendants in the sum of $1171.11 and $19 costs. On September 28, 1931, execution on the judgment was issued to the sheriff of Los Angeles County and was returned wholly unsatisfied. On May 15, 1936, plaintiff filed a notice of motion, supported by his affidavit, to the effect that on May 22, 1936, he would move the court for an order directing the issuance of execu-

tion against both defendants. Further affidavits were filed by both parties which were used on the hearing of the motion. It was denied and this appeal followed.

Section 685 of the Code of Civil Procedure requires the affidavit supporting the motion to set ''forth the reasons for failure to proceed in compliance with the provisions of section 681 of this code. The failure to set forth such reasons as shall, in the discretion of the court, be sufficient, shall be ground for the denial of the motion.''

A reading of the supporting affidavit leads to the conclusion that it does not satisfactorily set forth the reasons for the failure to comply with the provisions of section 681 of the Code of Civil Procedure. Defendants demurred to its sufficiency on that ground. It does not appear from the record that this objection was pressed in the court below. From the affidavits subsequently filed it sufficiently appears that neither defendant had any property subject to execution within five years after the entry of judgment which is now urged as the reason why they were not further pursued by means of the writ.

The motion was heard and decided upon all the affidavits filed. These affidavits sufficiently set forth the reason for plaintiff's noncompliance with the statute. As the defects in the supporting affidavit were not pressed in the court below, as far as the record shows, and as these defects were cured by other affidavits used at the hearing without objection, in so far as the record shows, the defect was cured and defendants should not now be permitted to seriously challenge here the sufficiency of the supporting affidavit.

It is thoroughly settled that granting or denying a motion to issue execution after a lapse of five years from the entry of judgment is a matter within the sound discretion of the trial court and that its decision will not be reversed on appeal except for a clear abuse of such discretion. (*Wheeler* v. *Eldred,* 121 Cal. 28 [53 Pac. 431, 66 Am. St. Rep. 20]; *Wheeler* v. *Eldred,* 137 Cal. 37 [69 Pac. 619]; *Doehla* v. *Phillips,* 151 Cal. 488 [91 Pac. 330]; *Weldon* v. *Rogers,* 159 Cal. 700 [115 Pac. 464]; *Creditors Adjustment Co.* v. *Newman,* 185 Cal. 509 [197 Pac. 334]; *Radonich* v. *Radonich,* 130

Cal. App. 250 [20 Pac. (2d) 51]; *Faias* v. *Superior Court,* 133 Cal. App. 525 [24 Pac. (2d) 567]; *Mohr* v. *Riccomi,* 14 Cal. App. (2d) 416 [58 Pac. (2d) 659].)

The sole question for our decision is whether or not the trial judge abused his discretion in refusing to grant the motion to issue the execution. A similar question was before the court in the case of *Demens* v. *Huene,* 89 Cal. App. 748 [265 Pac. 389], where the trial court had first ordered execution to issue and then granted defendant's motion to vacate that order. The second order was before the appellate court for review and was reversed because it was a clear abuse of the sound discretion vested in the trial judge. The judgment was rendered on June 24, 1915. The motion to issue execution was made on February 11, 1924. In discussing the question of abuse of discretion it was said:

"The affidavit of the defendant Clara A. Huene states that she and her husband, judgment debtors, were engaged in conducting rooming-houses for many years, and that up until November, 1919, she owned and possessed ample personal property consisting of furniture and leases in and of several apartment houses for varying periods in Los Angeles to have satisfied the judgment through execution, but that no effort was made to levy execution and no demand for payment was made; that up to such date plaintiff knew the above facts and knew or had means of knowing affiant's whereabouts. The affidavit of the defendant E. A. Huene states that he lived in Los Angeles June 24, 1915, and continually thereafter until June, 1918, during which time he possessed an automobile, well worth the amount of the judgment, which he used openly on the streets of Los Angeles, and that plaintiff knew or had means of knowing it; that no attempt to levy was made prior to January 30, 1924. Counteraffidavits were filed by plaintiff, but for the purpose of determining whether or not there has been an abuse of discretion it will be taken that these are the true facts. 'It is true as claimed by the learned counsel for the respondents, that orders like the present, in legal parlance, rest very much in the discretion of the court below, and will not be disturbed by this court unless we are satisfied that the order is so plainly erroneous as to

amount to an abuse of discretion. (Citing authorities.) The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. If it be doubted whether the excuse offered is sufficient or not, or whether the defense set up is with or without merit *in foro legis,'* when examined under those rules of law by which judges are guided to a conclusion, the judgment of the court below will not be disturbed. If, on the contrary, we are satisfied beyond a reasonable doubt that the court below has come to an erroneous conclusion, the party complaining of the error is as much entitled to a reversal in a case like the present as in any other.' (*Bailey* v. *Taaffe,* 29 Cal. 422.)

"It is the intent of the law, and it would seem the intent, as well, of good morals, that everyone being able should pay his debts. Here we find the debt ripened into a judgment. Several years go by and it is not paid. The law does not contemplate that, the time of the statute of limitations having run, the liability to pay has completely passed. The motion made in this case is provided for by law. There must, then, be something added to the mere fact of the expiration of the time and that the judgment debtors were possessed of personal property, which would move the court to deny the right given by the statute, section 685 of the Code of Civil Procedure. As was said in *Hovey* v. *Bradbury,* 112 Cal. 620, at page 625 [44 Pac. 1077, 1078] : 'Nor, when we come to view plaintiff's conduct generally, can there be seen any act or omission upon his part which would justify so stern a treatment of his claim as its rejection under the doctrine of laches. That doctrine, as has been said, is neither technical nor arbitrary. It is not designed to punish a plaintiff. It can be invoked only where to allow the claim would be, because of the claimant's own acts, to permit an unwarranted injustice.

It looks to the peace of society, and not to the punishment of the claimant, even if he has been negligent.'

"And in *Carr* v. *Sacramento C. P. Co.,* 35 Cal. App. 439 [170 Pac. 446] : 'Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another.' (See, also, *Cahill* v. *Superior Court,* 145 Cal. 42 [78 Pac. 467], and *McGibbon* v. *Schmidt,* 172 Cal. 70 [155 Pac. 460].)

"What are the circumstances, then, which could justly move the lower court to deny the benefit of this statute to the plaintiff? We are at a loss to find any."

The record discloses the following facts most favorable to the cause of defendants: The complaint sought recovery of a balance of $1171.11 for labor and goods, wares, merchandise, lumber and cement furnished defendants. It was filed May 27, 1930. Defendants appeared by demurrer and failed to answer after their demurrer was overruled. Judgment was entered August 8, 1930. An attachment was issued May 27, 1930, and returned June 6, 1930. The sheriff attached tracts 74 and 88, township 14 south, range 15 east, S. B. M. in Imperial County. Tract 74 was worth approximately $20,000, and was incumbered for approximately $8,800. At the time of the commencement of this action defendants were owners of more than 10,000 sheep of unstated value and other personal property of the value of about $4,000. The sheep were encumbered by a chattel mortgage of more than $200,000. At about the time plaintiff started his action several other local creditors started other actions in Imperial County. The Chicago Live Stock Company held the chattel mortgage on the sheep and was furnishing money with which to finance defendants' operations of buying, fattening and selling sheep. When the several actions were filed by local creditors in Imperial County the Chicago Live Stock Company refused to advance defendants further money and foreclosed its mortgages, taking all of defendants' property at a great loss to them. The suits by the local creditors are listed as follows: *Morse* v. *Shaw Bros.* for $790.34, filed May 20, 1930; *Phillips* v. *Shaw Bros.* for $2,360 (date of filing not given, but number indicates filing earlier than McClelland case) ; *McClelland* v. *Shaw Bros.* for $1171.11, filed May 27,

1930; *Gray* v. *Shaw Bros.,* for $451.75, filed August 5, 1930. The mortgage on tract number 74 was foreclosed and the property bid in at foreclosure sale for $11,268.75. Plaintiff took no steps to enforce the lien of his judgment on tract number 74 or collect the judgment out of the excess of the value of the property over the mortgage or the amount for which it was sold at foreclosure sale. It is also stated in the affidavit of I. H. Shaw that ''this defendant has never had or acquired any property whatever since the entry of the judgment in this action, and neither of the defendants now have or possess any money or property of any kind out of which said judgment can be paid or satisfied, in whole or in part.''

█ Two grounds are stated in the affidavits and urged here, upon which it is argued that the sound discretion of the trial judge must have rested in denying the motion for issuance of the execution. They are: (1) that tract number 74, which was attached when this action was filed, had a value of $11,200 over the mortgage and a value of $8,731.25 over the amount for which it was sold at foreclosure sale out of which plaintiff should have satisfied his judgment; (2) that the bringing of the suits by the local creditors in Imperial County impaired and destroyed the credit of defendants so that they received no further advancements by the Chicago Live Stock Company; that these suits caused the holders of the mortgages on their real and personal property to foreclose their liens, causing the bankruptcy of defendants and the loss to them of $25,000, the net value of their properties over the liens upon them.

█ It has been held that where it is shown that defendants had property during the five-year period following the entry of judgment out of which the judgment might have been satisfied furnishes no ground for refusal of the trial court to order issuance of execution after the lapse of five years. (*Demens* v. *Huene, supra.*) It also has been held that where an attachment was issued and levied on property of defendant at the time the action was instituted and execution was not issued and the attached property was not sold to satisfy the judgment is not sufficient reason for denial of

the motion to issue execution after the lapse of five years. (*Water Supply Co.* v. *Sarnow*, 6 Cal. App. 586 [92 Pac. 667].) In *Palace Hotel Co.* v. *Crist*, 6 Cal. App. (2d) 690 [45 Pac. (2d) 415], it was urged that during the twenty years elapsing between the entry of judgment and the motion for issuance of execution defendant had property out of which the judgment could have been satisfied and that it was inequitable and unjust to permit execution to issue after the lapse of so long a time. In disposing of this contention the District Court of Appeal said:

"It is further urged that as approximately twenty years had elapsed from the rendition of the former judgment and application to the court to enforce it, that for many years the defendant owned real estate out of which the judgment could have been satisfied, . . . (that) such a situation constituted. laches, which should bar a recovery on the part of the plaintiff. . . . In *Demens* v. *Huene*, 89 Cal. App. 748 [265 Pac. 389], where execution had been issued on order of the trial court, and the court subsequently recalled the execution because a period of nine years had elapsed from the date of the judgment and the making of the order directing the issuance of execution and the further ground that for a period of five years after the judgment had been entered the debtors had property upon which execution could have been levied, the appellate court held that the recalling of the execution was an abuse of discretion. It is said at page 754 of the case last cited, quoting from *Hovey* v. *Bradbury*, 112 Cal. 620, at page 625 [44 Pac. 1077], concerning the doctrine of laches, 'It is not designed to punish a plaintiff. It can be invoked only where to allow the claim would be, because of the claimant's own acts, to permit an unwarranted injustice. It looks to the peace of society, and not the punishment of the claimant, even if he has been negligent.' We think it is clear that the doctrine of laches has no application here and that the trial court did not abuse its discretion in permitting the enforcement of the original judgment."

The mere fact that defendants had an equity in property that was encumbered in an amount of several thousand

dollars in excess of plaintiff's judgment, which equity was only available to plaintiff after he had satisfied the encumbrance, should not be held to deprive plaintiff of his right to enforce his judgment after the lapse of five years from the entry of judgment.

The second argument of defendants to the effect that the actions filed by the local creditors so injured their credit that they could not continue their business and their mortgages were foreclosed causing a loss to them of $25,000, bears a resemblance to the equitable doctrine of laches in that it is urged that the delay in the issuance of the writ of execution has caused such change in the position of defendants that it would be inequitable or unjust to permit it to issue after the lapse of the statutory period of five years. (See 11 Cal. Jur. 51.) We can see nothing in the record upon which to base such an argument. The loss of credit was not due to the failure to issue execution within five years but to the filing of the suits. The same is true of the foreclosure proceedings. Defendants' credit had been impaired and their property lost by foreclosure long before the lapse of the five years. There can be no causal connection between the loss of credit and the institution of the foreclosure proceedings and the failure to issue execution. The affidavits of defendants clearly lay the blame for their losses to the filing of the suits and not the failure to issue the execution. The failure to issue the execution within five years caused no shown loss to them or change in their position that would furnish any sound ground for a denial of the motion to issue the execution.

There is but one case that we have found that seems to conflict with the views we have expressed and the conclusions we have reached. (*Williams* v. *Goodin,* 17 Cal. App. (2d) 62 [61 Pac. (2d) 507].) We are not prepared to say that there is an actual conflict because we have not examined the record in that case. There is a vigorous and logical dissenting opinion which is in accord with what our study has led us to believe is the established rule of law governing a case of this kind. We conclude that in the instant case there was nothing presented to the trial judge which justified the

exercise of his sound discretion which resulted in his denying the motion of plaintiff under consideration here.

The order appealed from is reversed.

Barnard, P. J., and Jennings, J., concurred.