[Civ. No. 3137.   Fourth Dist.   May 8, 1944.]

W. R. MONGERSON, Appellant, v. THOMAS C. WIL-
LIAMS, Respondent.

Samuel Taylor and Alfred Siemon for Appellant.

Mack, Werdel & Bianco and D. Bianco for Respondent.

BARNARD, P. J.—This is an appeal from an order deny-ing a motion for the issuance of an execution after the lapse of five years from the entry of the judgment.

A judgment for $2,333.57 in favor of plaintiff and against defendant was entered on February 2, 1932. On appeal that judgment was increased to $3,683.57 (*Mongerson* v. *Williams,* 136 Cal.App. 569 [29 P.2d 303]). The remittitur was issued on April 5, 1934. A transcript of the judgment was recorded on March 5, 1932, and another transcript of the amended judgment was recorded following the receipt of the remitti-tur. A small amount was paid on the judgment which is not material here.

Before the judgment became final, and on March 7, 1934, the defendant transferred all his property, including several parcels of real estate, to his two sisters by a conveyance which was recorded. On the same day that the remittitur was filed the defendant filed a notice of motion for a partial satisfac-tion of the judgment, claiming that the plaintiff had received $1,350 from certain insurance. That motion was taken under submission by Judge Owen on April 28, 1934, but was never decided by him. While it was still under submission, and on August 10, 1938, the plaintiff gave notice of a motion for an order for the issuance of an execution. On September 6, 1938, the defendant gave a second notice of motion for a par-tial satisfaction of the judgment, based upon the same claim as the first motion. Judge Owen having died, these last men-tioned two motions were heard by Judge Bradshaw on Sep-tember 19, 1938, and an order was entered denying the de-fendant's motion for a partial satisfaction of the judgment and granting the plaintiff's motion for the issuance of an execution. An execution was issued and later returned un-satisfied.

On July 10, 1943, supplemental proceedings were initiated. On August 30, 1943, plaintiff filed notice of another motion for an order directing the issuance of an execution. Affida-vits were filed by both parties and after a hearing the court entered an order denying the motion, the court stating that the plaintiff had not used diligence in collecting the judgment

in that he "still had a lien on the property at the time he procured an execution in 1938." This appeal followed.

It seems clear that the reason assigned by the trial judge for denying this motion, that the plaintiff still had a lien on the property when he procured an execution in 1938, is not a valid one. The judgment was entered on February 2, 1932, and the lien thereof would expire on February 2, 1937. No record lien was acquired by the second filing of the transcript of the judgment, after the coming down of the remittitur in 1934, since the defendant had previously transferred all of his property. Moreover the transfer of the property in the absence of evidence of fraud being available to the plaintiff, had rather effectively destroyed the value of any such lien to the plaintiff. The question remains, however, whether the order in question may be sustained on any other grounds.

In *Butcher* v. *Brouwer*, 21 Cal.2d 354 [132 P.2d 205], in considering the 1933 amendment of section 685 of the Code of Civil Procedure, the court said:

"It is clear that the principal object of the new enactment was to place upon a creditor seeking to enforce a judgment more than five years after its entry, the burden of showing why he was not able to satisfy his claim within the statutory period during which he is entitled to an execution as a matter of right. . . . and in view of the legislative and judicial history of section 685, its present provisions should be construed as authorizing the court to give a creditor an execution only if, during the five years following entry of judgment, he exercised due diligence in locating and levying upon property owned by the debtor, or in following available information to the point where a reasonable person would conclude that there was no property subject to levy within that time. And even though the creditor may have satisfied the court that he has proceeded with due diligence to enforce his judgment under section 681, the court may still deny him its process if the debtor shows circumstances occurring subsequent to the five-year period upon which, in the exercise of a sound discretion, it should conclude that he is not now entitled to collect his judgment."

The court then pointed out that in that case the creditor had made every reasonable effort within the five-year period to collect his judgment, that the debtor had effectively pre-

vented him from doing so and that when the judgment debtor had next acquired property in his own name it was so heavily encumbered that nothing could have been realized upon it by the levy of the execution.

It is thus established that it is now incumbent upon a judgment creditor to show that he has exercised due diligence during the five years following the entry of judgment in attempting to locate property upon which execution may be levied, and that even if this is shown to the satisfaction of the court, the court may deny him relief if the debtor shows circumstances occurring subsequently to the five-year period upon which, in the exercise of its sound discretion, the court is justified in concluding that the creditor is not entitled to collect his judgment. It is well settled that this discretion is not a capricious nor arbitrary one but is one guided and controlled in its exercise by fixed legal principles, and intended to subserve and not to impede or defeat the ends of substantial justice. (*McClelland* v. *Shaw*, 23 Cal. App.2d 107 [72 P.2d 225]; *McNabb* v. *McNabb*, 47 Cal.App. 2d 623 [118 P.2d 869].) In speaking of the matter of the diligence required, the court said, in *Hatch* v. *Calkins*, 21 Cal.2d 364 [132 P.2d 210]: "The precise question for determination, therefore, is whether the record shows that, had the judgment creditor exercised reasonable diligence in the investigation of the appellant's assets, he would have discovered property subject to execution."

Applying these rules to the instant case we find no facts in the record before us justifying a conclusion that the plaintiff failed to exercise due diligence during the five-year period, or, as a matter of fact, after that period had expired. Nor are any subsequent developments shown which justify the conclusion that the defendant has in any way been led to change his position or that the plaintiff should no longer be entitled to collect his judgment.

In issuing the execution in September, 1938, the court determined that the plaintiff had not been negligent in this regard up to that time. Not only was this judicially determined but the facts would warrant no other conclusion. It was more than two years before the judgment became final, and the plaintiff could hardly have been expected to have taken out execution during that time when the amount of the judgment was still in question. On the filing of the remittitur the defendant started proceedings in which he claimed that

the judgment had been partially satisfied to the extent of $1,350. That matter was not determined until after the five-year period had elapsed. Until it was determined and the dispute as to the amount was settled, any execution which might have been issued would probably have been recalled. Before the judgment became final the defendant had transferred all of his property to other persons. The plaintiff's affidavits further show that he was unable to realize anything on the execution issued in 1938; that between the date of the original judgment and the starting of the supplementary proceedings in August, 1938, his attorney searched the records twice a year to see if any property then stood in the defendant's name; that since March 7, 1934, there has been no property standing of record in the name of the defendant; that the plaintiff learned of the transfers made by the defendant in 1934; that plaintiff and his attorney knew of no facts by which they could hope to prove that these transfers were fraudulent; that they were informed that this property was unsalable and had only a nominal value; that the taxes on the property had been allowed to go delinquent for many years; that the defendant stated and represented to them that he was entirely without assets and unable to pay the judgment; that this condition existed until shortly before this last proceeding was started, at which time the plaintiff and his attorney secured information which convinces them that it is possible to now show and establish the fact that the defendant is the owner of large and extensive properties now standing in the names of his sisters, and that an execution is desired for the purpose of levying on such properties in an attempt to collect the judgment.

In his affidavit the defendant admits that he transferred these properties and contends that he transferred them for value, but states that the plaintiff might have levied upon them at any time had he so desired. He also sets forth that the properties were at all times of a value in excess of the judgment and the amount of any unpaid taxes. He further sets forth that the judgment was originally given for an amount greater than his debt to the plaintiff, which issue was adjudicated against him when the judgment was entered.

While there is a conflict as to the value of these properties during the intervening years this is not very material here. There is no conflict on any fact relative to the real issue as

to whether the plaintiff did everything he should have done to enforce collection of this judgment, and no facts appear which in any way indicate that defendant should not now pay the judgment or that it would be inequitable to compel him to do so. It appears that a just debt has not been paid; that the defendant has kept his property concealed in order to defeat this judgment; that the plaintiff has made every reasonable attempt to find something upon which to levy; and that he was unable to do so until just before the proceeding here in question was started. Under these circumstances, and under the well established rules above referred to, we think it was an abuse of discretion for the trial court to deny the motion and to refuse to issue the execution.

The order appealed from is reversed with directions to grant the plaintiff's motion.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing was denied June 5, 1944, and respondents' petition for a hearing by the Supreme Court was denied July 6, 1944.