[Civ. No. 14564. Second Dist., Div. Three. Mar. 6, 1945.]

ALBERT M. HULL et al., Plaintiffs; EARL T. HULL, Appellant, v. MR. A. SANTINO et al., Respondents.

W. W. Middlecoff and Oscar S. Elvrum for Appellant.

Jerrell Babb and David G. Kling for Respondents.

DESMOND, P. J.—Earl T. Hull, individually and as surviving partner of the firm of Albert M. Hull and Earl T. Hull, appeals from an order of the Superior Court of Los Angeles County denying his motion for issuance of an execution after five years had elapsed from June 17, 1938, the date upon which a final judgment in favor of the partnership was entered. That judgment, based upon a promissory note signed by defendants, Mr. and Mrs. Santino, on October 29, 1932, amounted to $3,150.63, and no portion of it being collected within the five-year period expiring June 17, 1943, Earl T. Hull gave notice, under date of November 27, 1943, of his intention to move the court for issuance of execution. Such a motion is provided for by section 685, Code of Civil Procedure, which, so far as pertinent, reads as follows:

"In all cases the judgment may be enforced or carried into execution after the lapse of five years from the date of its entry, by leave of the court, upon motion, *and after due notice to the judgment debtor accompanied by an affidavit or affidavits setting forth the reasons for failure to proceed in compliance with the provisions of section 681 of this code. The failure to set forth such reasons as shall, in the discretion of the court, be sufficient, shall be ground for the denial of the motion.*" (Italics ours.) The language in italics was added to the section by an amendment adopted by the Legislature in 1933, the force of which was recognized by the Supreme Court almost ten years later when, on December 10, 1942, opinions were filed in *Butcher* v. *Brouwer,* 21 Cal.2d 354 [132 P.2d 205]; *Beccuti* v. *Colombo Baking Co.,* 21 Cal.2d 360 [132 P.2d 207], and *Hatch* v. *Calkins,* 21 Cal.2d 364 [132 P.2d 210].

It is provided by section 681 of the Code of Civil Procedure that "The party in whose favor judgment is given may, at any time within five years after the entry thereof, have a writ of execution issued for its enforcement. . . ."

The question raised by this appeal is whether the court abused its discretion in refusing to authorize the issuance of the writ of execution. If no abuse is found, this court may not set aside the order. The problem which the trial judge was called upon to solve was whether the creditor has

exercised due diligence, under the circumstances of this case, in attempting to enforce his judgment during the five-year period. As stated in *Beccuti* v. *Colombo Baking Co., supra,* at page 363, "Whether he has exercised such diligence is, by the express provisions of the statute, for the trial court to determine in its discretion. And an order made under such authority will not be disturbed upon appeal unless it clearly appears that the determination constitutes an abuse of discretion. (*Butcher* v. *Brouwer, supra.*)" █ A study of the affidavits in support of and opposing the motion and the principles set out in the three opinions just mentioned convinces us that this is not a case where it can be said that the action of the trial judge constituted an abuse of discretion.

The motion for execution was supported by an affidavit made by Mr. Hull. Counteraffidavits opposing the motion were filed by defendant Appollonio Santino and his son, Victor. These were followed by affidavits in rebuttal, signed by Oscar S. Elvrum, John F. McNeil and Paul Briskin, each at one time or another acting as attorney for appellant.

Mr. Hull, in his affidavit, stated that he was the owner of the judgment which had been obtained against these defendants, having acquired the interest of his partner, Albert M. Hull; that at the time the judgment was entered Mr. and Mrs. Santino were the owners and in possession of the West half of the Northwest quarter of Section 4, Township 7 North, Range 13 West, S. B. B. M., located in the county of Los Angeles; that "said property at said time, was doubtfully of a value sufficient to pay the encumbrances then on said property prior to the entry of said judgment and to provide for a $5000 homestead then on said property by the defendants, judgment debtors." The affidavit further recited that on the 5th day of December, 1938, the judgment creditors caused an abstract of the judgment to be filed in the office of the County Recorder of the County of Los Angeles; "That thereafter and prior to the 16th day of August, 1943, said real property above described became and as affiant believes, is of the value of at least $25,000.00; that it is highly improved with residence and out-buildings and is planted to alfalfa; that the price of alfalfa is now over $24 per ton, while when said judgment was obtained it was less than $10 per ton as affiant believes, and affiant alleges that so far as he can ascertain said judgment debtors still own the whole equitable interest in said real property.

"That on or about the 16th day of August, 1943, said judgment debtors conveyed by grant deed, all of said real property to their son Victor Santino, upon a recited consideration in said deed of '$1.00 and other good and valuable considerations', and inserted in said deed the words, 'and in further consideration of the promise on the part of the grantee to the grantors of support for the remainder of the lives of the grantor or either of them by the grantee do hereby grant to Victor Santino, a married man as his separate property, all that real property (above described), reserving to the grantors a life estate therein, and subject to current taxes and deed of trust for $1000 dated May 5, 1930, recorded in book 10094 page 317 of Official Records of Los Angeles County and subject to a homestead recorded in book 11332 at page 374, said Official Records of said County.'

"That affiant states on his information and belief that in fact, and in equity, said Victor Santino, the son of said judgment debtors, holds said above described real property upon a trust and agreement for the benefit of said judgment debtors created by them for their own support and in addition thereto with the object and purpose of obtaining for themselves and their use the value of said property over and above the $5000 exemption of said homestead, free and removed from the possibility of said affiant obtaining satisfaction of his said judgment out of said property."

The defendant, A. Santino, in his counteraffidavit, alleged that he is seventy-one years of age and now resides at Tujunga in the county of Los Angeles; that he moved there in the winter of 1941 from the West half of the Northwest quarter of Section 4, Township 7 North, Range 13 West, S. B. B. M., which is located in Lancaster, California, where Earl T. Hull has resided; that during the whole life of the judgment in question the land in Lancaster was "conservatively valued at not less than $15,000.00, and in this connection affiant further alleges that during the whole life of the said judgment practically the same amount of alfalfa was growing on the land as was grown in the last alfalfa season in 1943, and that the value of the crops produced on said land during the life of the judgment plus the value of the land at a minimum of $15,000 less all encumbrances and less $5000 homestead valuation, left a margin to pay said judgment (principal, interest and costs) many times over, if said plaintiffs had levied

execution upon said land, during the life of said judgment.''
In this affidavit, Mr. Santino states that Mr. Hull ''had full
opportunity during the whole life of the judgment to see the
alfalfa grown on said land which was cut, baled and stacked
in the hay shed and hay barn which were located on said
land, and to levy execution on the same had he so desired,
but he neglected to do so.'' He also stated that on August
16, 1943, he and his wife executed a deed to his son, Victor,
and at that time Victor ''took said property . . . under the
terms of said deed and not otherwise.'' Another allegation
in the counteraffidavit of Mr. Santino is to the effect that at
all times during the whole life of said judgment the Lancaster
property has been of a fair, reasonable value of two or three
times the amount of said judgment over and above all encum-
brances and above the homestead exemption; ''Further, that
the value of the unincumbered alfalfa raised on said land
during the life of said judgment was more than sufficient
to have paid the amount of said judgment, principal, interest
and costs, long before said judgment became outlawed.'' Mr.
Santino closed his counteraffidavit of December 13, 1943, with
the statement that ''instead of levying execution while the
judgment was alive, the plaintiff, Earl T. Hull alone, brought
an action on said judgment, in this court, No. 486-891, on
July 16, 1943.''

Mr. Elvrum, in his affidavit, stated that on or about Novem-
ber 8, 1938, he examined the defendant Maria Santino in sup-
plementary proceedings and mailed a report of those proceed-
ings to Mr. McNeil at Lancaster. He attached, as an exhibit
to his affidavit, the letter to Mr. McNeil, in which it appears
that Mrs. Santino stated that she and her husband had ac-
quired the Lancaster property in 1930; that on or about De-
cember 19, 1931, she executed a declaration of homestead at-
taching to that property. In this letter Mr. Elvrum stated to
Mr. McNeil, ''I asked Mrs. Santino if she cared to make any
arrangement for the payment of this obligation to Hull Bros.,
and she said she did not. If we obtain anything from this
defendant, we will have to battle every inch of the way. I
feel, however, that Hull Bros. should advance the money
for the complete examination of the title of the property I have
mentioned before, as this will be the basis of the action to be
brought.'' Within a month thereafter a title company report,
which is attached as an exhibit to Mr. Elvrum's affidavit,

showed that the West half of the Northwest quarter of Section 4, Township 7 North, etc., S. B. B. M., described in the report as parcel I, belonged to the defendants Santino but subject (1) to the declaration of homestead on 69.39 acres; (2) to a trust deed to secure a note for $1,000, dated May 5, 1930, due three years after date; (3) to an agreement to convey a portion of said parcel I, executed by defendants Santino to Gus Angelus, recorded March 2, 1931; (4) to a mortgage covering parcel I and other property in favor of the Pomona Pump Company to secure a note of March 1, 1934, in the sum of $739.22.

Mr. McNeil's affidavit was to the effect that prior to March 20, 1943, he was one of the attorneys for the plaintiff in the action and at a meeting held on or about March 15, 1943, between himself, Mr. Hull and Paul Briskin, in the city of Lancaster, "it was agreed between the three of them that from said time forth said Paul Briskin would act as sole attorney for said Plaintiffs to collect said judgment, and manage the case"; that prior to that time he had diligently tried to find property of the defendants exempt from execution but was unable to find any except the Lancaster property, which had been homesteaded by the defendants; that "at said times it was doubtful in the opinion of affiant whether said homestead was of sufficient market value to justify an attempt to sell it under execution, and obtain a substantial amount over the exemption allowed by law. .... That affiant has been a resident of the Antelope Valley, Los Angeles County, where said Homestead property is located for over ten years, and has owned real property in said community, and has held the office of Justice of the Peace for several years in *in* said Antelope Valley and Township; that he has dealt in real property, and knows of many transactions of sales in said Valley in the last 5 years; that real property in said vicinity has increased in Market Value from 100% to 300% in the last five years."

The affidavit of Paul Briskin, dated December 27, 1943, shows that several years prior to March 1, 1943, he maintained law offices and resided in Lancaster; that about March 1, 1943, he was consulted by Mr. McNeil with a request that he assist, as one of the attorneys, to bring proper actions or proceedings to renew the judgment before it had expired and to collect it by execution or otherwise; that all papers relative to

the case were left with him but on or about the 20th of March, 1943, he volunteered for service in the American Red Cross and was immediately assigned to Washington, D. C.; that about June 2, 1943, he was transferred to Seattle and then to Victorville, "and since April, 1943, to the present time he has not been allowed to visit his office on business, and he was kept in Seattle Washington from June 2d, to August 13th, 1943"; that he made diligent effort to procure some attorney to act for him and attend to the unfinished business in his law office in Lancaster, California, and was unable to obtain any assistance until after the judgment had expired by limitation of five years from its entry; that on July 1, 1943, he obtained the assistance of W. W. Middlecoff; that all their transactions were carried on by mail and that they never met personally until August 15, 1943.

In support of his claim that the action of the trial judge represents an abuse of discretion, the appellant points out that section 685 of the Code of Civil Procedure contains no limitation of time within which an execution may be ordered, and urges that equity and good conscience require the judgment to be paid; further, that the discretion of the court "should not be used to increase the burdens which the law already casts upon a just creditor for relief." In his argument on these various points he cites *Corcoran* v. *Duffy* (1937), 18 Cal.App. 2d 658 [64 P.2d 735]; *City of Los Angeles* v. *Forrester* (1936), 12 Cal.App.2d 146 [55 P.2d 277]; *McClelland* v. *Shaw* (1937), 23 Cal.App.2d 107 [72 P.2d 225]; *Palace Hotel Co.* v. *Crist* (1935), 6 Cal.App.2d 690 [45 P.2d 415], and *Passow* v. *Bell* (1938), 27 Cal.App.2d 360 [81 P.2d 224]. While these cases were decided after 1933, the effective date of the amendment, they preceded the three 1942 decisions mentioned in the opening paragraphs of this opinion. The first of these, *Butcher* v. *Brouwer, supra,* at page 358, holds that "in view of the legislative and judicial history of section 685, its present provisions should be construed as authorizing the court to give a creditor an execution only if, during the five years following entry of judgment, he exercised due diligence in locating and levying upon property owned by the debtor, or in following available information to the point where a reasonable person would conclude that there was no property subject to levy within that time." This principle is reiterated and enforced in the *Beccuti* v. *Colombo Baking Co.* case, *supra,* and in *Hatch* v. *Calkins, supra.*

Although the title report which was obtained immediately after Mrs. Santino's examination in November, 1938, showed that the $1,000 note attaching to the real estate in question had already expired by its terms and that the mortgage to the Pomona Pump Co. had been executed four years prior to the date of the judgment, no further inquiry seems to have been made then or at any later time during the life of the judgment to ascertain whether those liens had been cancelled or extended. And although appellant resided in Lancaster, where defendants also resided until 1941, there is nothing in the record to indicate that he or his partner or any of his attorneys ever made a demand, oral or written, for the payment of any portion of the judgment. Nor does it appear that they ever made any inquiry of Mr. Santino concerning his assets or property although apparently from the statements made in the affidavits furnished by both sides, the ranch was in a flourishing condition, constantly increasing in value. Mr. Hull, according to his affidavit, believes that the property became worth "at least $25,000" prior to August 16, 1943, and one wonders why with that belief and since Mr. Elvrum five years previously had predicted a battle every inch of the way to recover anything from the defendants, he did not pursue his rights at least to the extent of examining Mr. Santino in supplemental proceedings. Presumably, he could have reengaged Mr. McNeil since in the latter part of the five-year period Mr. Briskin was unable to serve. We note that Santino, in his affidavit, alleges that "during the whole life of said judgment said land was conservatively valued at not less than $15,000." If this statement were accepted as true, or even if it were not, the trial judge may well have concluded that the record of inactivity established by appellant over the five-year period constituted such lack of diligence on his part in levying upon the property owned by the debtor as to justify a refusal of the writ of execution.

No abuse of discretion appearing in this case, the order is affirmed.

Shinn, J., and Wood (Parker), J., concurred.