[Civ. No. 15026.   Second Dist., Div. One.   May 15, 1946.]

THEODORA K. TROENDLE, Appellant, v. MOSTYN C. H. CLINCH et al., Respondents.

Edward M. Raskin for Appellant.

Laurence B. Martin for Respondents.

DORAN, J.—The record discloses that an action claiming damages for fraud, was commenced by appellant's assignor, Isabel M. Troendle, deceased, on September 16, 1929, against several defendants, one of whom is the respondent Clive Preston Thurtle. On October 22, 1929, a judgment was entered in favor of the plaintiff in such action and against the defendants Mostyn C. H. Clinch, Clive Preston Thurtle and Grace Donnell, in the sum of $12,625 plus costs of $83.85. This judgment was affirmed by the District Court of Appeal on July 29, 1932. (125 Cal.App. 147 [13 P.2d 852].)

On October 1, 1932, Isabel M. Troendle assigned a one-half interest in said judgment to appellant, her daughter, and the remaining one-half to her attorney Phil S. Gibson who on August 27, 1942, assigned to appellant. The respondent Thurtle was, on October 17, 1933, examined on supplementary proceedings concerning his assets and was discharged. In November of 1933, the sum of $8,500 on account of said judgment, was collected from the estate of Lem A. Brunson, a surety on the appeal bond in such action. The respondent has never paid anything, nor has the balance due on the judgment been paid by anyone.

In June, 1935, one Roy Rosen, employed for that purpose,

commenced an investigation to discover possible assets which might be levied upon, and thereafter, at least once each year until 1941, examined the records in the offices of the County Recorder and Tax Assessor of Los Angeles County. These records failed to disclose any such assets. Finally, on November 19, 1941, according to Rosen's affidavit, the records showed the respondent Thurtle and wife to be the owners of certain real estate in Los Angeles subject to an FHA loan of $8,600. Also, two automobiles were found to be registered in respondent's name. In October, 1942, after learning that Thurtle was employed in Los Angeles, Mr. Rosen confronted respondent with the apparent ownership of real estate and automobiles. According to the Rosen affidavit Thurtle said: "I have no interest in that property of any kind because it belongs to my wife as her separate property"; further, that an execution against the automobiles would yield nothing because they were heavily encumbered. Later, about October 21, 1942, Rosen learned that Thurtle had caused a homestead to be recorded in respect to the real estate. Thurtle's attorney, Laurence B. Martin, advised Rosen that Thurtle was unable to pay the judgment and that the latter's "financial situation was not good." The Rosen affidavit further states that in 1944 Rosen discovered that Thurtle was engaged in the real estate business in Beverly Hills; that in January, 1945, Thurtle handled a series of real estate transactions from which resulted large commissions. In reference to the other defendants Rosen averred that Mostyn C. H. Clinch died in 1937 or 1938, apparently leaving no estate; that Grace Donnell had left Los Angeles in 1934 or 1935 and had remarried; and that affiant had been unable to discover any property of any of the defendants other than as mentioned.

Appellant's motion under section 685 of the Code of Civil Procedure, seeking the issuance of an execution after five years from entry of judgment was filed on March 9, 1945; such motion was denied on April 16, 1945, and the present appeal followed. In the respondent's counteraffidavit contesting appellant's right to such execution, it is stated that "during the period of five years following the date when the said judgment became final, affiant had assets, income and resources sufficient to have paid the balance then due on said judgment. . . . That affiant has never stated that he had been unable to accumulate assets . . . or that he had not . . .

been able to make any payment. . . ." Respondent's affidavit specifies his earnings as approximately $200 per month from July, 1933, to Feb. 19, 1934, and thereafter as follows: 1934, $3,411.86; 1935, $5,347.85; 1936, $8,950.32; 1937, $9,000; 1938, $9,893.50.

According to the briefs of both parties, the chief question is whether the denial of appellant's motion for issuance of an execution, amounts to an abuse of discretion on the part of the trial court. It is apparently conceded by both parties that the granting or denial of such motion is a discretionary matter; consequently those cases which merely deal with the general rule in that respect, do not aid the present inquiry. Many, if not most of the cases cited by the respondent are of this character.

In *Hull* v. *Santino*, 68 A.C.A. 344, now published in 68 Cal.App.2d 300, 301 [156 P.2d 946], the court said: "The problem which the trial judge was called upon to solve was whether the creditor exercised *due diligence, under the circumstances of the case*, in attempting to enforce his judgment during the five-year period." (Italics added.) A denial of a motion for execution was there held proper where it appeared that the debtor was the owner of valuable land which had produced crops during the entire life of the judgment, and that the creditor had not demanded payment or made sufficient inquiry. The facts of the *Hull* v. *Santino* case are in no wise comparable to those of the present controversy; the decision does not purport to do more than follow the usual rule as to discretion, and is not authority for respondent's contention. Obviously, each case must be judged on its own merits as to "whether the creditor has exercised due diligence under the circumstances."

In *Mongerson* v. *Williams*, 64 Cal.App.2d 279, 282 [148 P. 2d 419], the court said: "It is well settled that this discretion [of the trial court] is not a capricious nor arbitrary one, but is one guided and controlled in its exercise by fixed legal principles, and intended to subserve and not to impede or defeat the ends of substantial justice. (*McClelland* v. *Shaw*, 23 Cal.App.2d 107 [72 P.2d 225]; *McNabb* v. *McNabb*, 47 Cal.App.2d 623 [118 P.2d 869].)" A petition for hearing was denied by the Supreme Court in the Mongerson case. There is similar pronouncement in the case of *Demens* v. *Huene*, 89 Cal.App. 748, 753 [265 P. 389], where the trial

court's exercise of discretion in respect to denying execution after five years, likewise was held to have been abused. In the Demens case the court said in part, as follows: "It is the intent of the law, and it would seem the intent, as well, of good morals, that everyone being able should pay his debts. . . . The law does not contemplate that, the time of the statute of limitations having run, the liability to pay has completely passed. The motion made in this case is provided for by law. There must, then, be something added to the mere fact of the expiration of the time and that the judgment debtors were possessed of personal property, which would move the court to deny the right given by the statute." In this connection it is well to note that, in the language of *Sharon* v. *Sharon*, 75 Cal. 1, 48 [16 P. 345], " 'abuse of discretion' in making such orders does not necessarily imply a willful abuse, or intentional wrong. In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason,— all the circumstances before it being considered." ██ To interpret the term "discretion" as authorizing a trial court to extend or refuse this remedial action as it sees fit is obviously wrong. Likewise, for an appellate court to summarily dispose of such a matter by refusing to interfere with such so-called discretion when manifest injustice appears to have resulted, cannot be right. As stated in many of the cases cited herein, and elsewhere, the circumstances of each case must be considered to the end that justice may be accomplished.

██ The basic question, as stated in appellant's reply brief, "is not whether the judgment creditor has exercised *extreme diligence,* but whether appellant has *exercised due diligence.*" By its terms section 685 does not require that a judgment creditor must have pursued every possible means to collect a judgment before the relief can be granted; such a rule is not suggested in any of the reported decisions. Indeed, such a construction would render the code provision practically worthless, and would place a premium upon the dubious acts of a judgment debtor who manages to get by the five-year period without paying his just debts. Such cannot be and is not, the law.

██ In the present case, as was said in *Terrill* v. *Shepherd*, 57 Cal.App.2d 290, 294 [134 P.2d 491], appellant's affidavit seeking the relief afforded by section 685, "indicates about the usual procedure that would be taken in the average law office to collect a judgment where the records revealed no

assets belonging to the judgment debtor. Extreme diligence is not demanded. . . .'' It may also be noted that, in the Terrill case, the creditor had not gone to the trouble of instituting supplementary proceedings to examine the judgment debtor, as had the appellant in the instant case, yet the appellate court said that such course was unnecessary and held that the judgment creditor was not ''guilty of laches in failing to take action when he had every reason to believe that his efforts would have been futile.''

This matter of respondent's examination under supplementary proceedings instituted by appellant in 1933, is, however, not without importance in the present controversy. In this connection the record recites that ''Mostyn C. H. Clinch and Clyde Preston Thurtle are sworn, examined and discharged.'' Since section 714 of the Code of Civil Procedure authorizing such proceeding, is for the expressed purpose of ''requiring such judgment debtor to appear and answer concerning his property,'' the record entry above referred to can only mean that Thurtle testified under oath that he possessed no property subject to execution, otherwise he would not have been discharged. The respondent's brief ''concedes appellant's assertions . . . concerning an examination of the former's (Thurtle's) assets.'' Yet it is to be noted that Thurtle's counteraffidavit hereinbefore referred to makes the following statement: ''That during the period of five years following the date when said judgment became final affiant had assets, income and resources sufficient to have paid the balance then due on said judgment.'' Certainly the appellant had no information concerning these assets, nor knowledge as to any bank account which respondents now states that he had, and in the supplementary proceedings the respondent made no such disclosure. In this particular at least, judgment creditors can hardly be expected to be clairvoyant, nor are they to be penalized for lack of knowledge.

Following the supplementary examination disclosing no assets, it appears that appellant followed the customary, usual, reasonable and diligent procedure ''that would be taken in the average law office to collect a judgment where the records revealed no assets,'' which, in the language of *Terrill* v. *Shepherd,* 57 Cal.App.2d 290, 294 [134 P.2d 491], is all that is required. As stated in appellant's brief, it is not ''obligatory for a judgment creditor to place detectives

upon the trail of the judgment debtor in order to show due diligence." However, appellant did employ an investigator to make a yearly check of the records, and in 1942 this investigator confronted Thurtle with information concerning apparent ownership of automobiles and real estate. Thurtle, according to Rosen, denied ownership in the realty and claimed the automobiles were heavily encumbered. Again, on January 6, 1943, Thurtle's attorney wrote the investigator that his client's "financial situation is not good," and that "naturally, we will do what we can to resist any such effort" to collect the judgment. And on January 9, 1943, through his attorney, Thurtle "declines to supply the affidavit" as to respondent's financial situation, and "simply states that his present financial situation is not only critical, but largely a month to month proposition." Doubtless, no single fact can be taken as controlling herein; the over-all picture, however, seems reasonably clear,—namely, that the respondent was making every possible effort to avoid the payment of the judgment in question.

■ Conceivably, the judgment creditor might have gone to more extreme lengths. This fact, however, is quite immaterial providing the creditor's activity satisfies the due diligence rule. To require more than customary law office procedure as constituting due diligence, would amount to strict construction of section 685, in clear opposition to section 4 of the Code of Civil Procedure providing that "all proceedings under it [the Code] are to be *liberally construed, with a view to effect its objects and to promote justice.*" (Italics added.) Likewise section 1858 of the same code specifies that "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein. . . ." In this connection note may be taken of the recent case of *Helvey* v. *Castles* (March 27, 1946) reported in 73 Cal.App.2d 667, 674 [167 P.2d 492], where, in affirming an order granting an execution under section 685 of the Code of Civil Procedure, the court said: "the statute under consideration should not be given a construction which would penalize a creditor for inactivity when he in good faith explores the available sources of information."

"Applying these rules to the instant case," as was said in *Mongerson* v. *Williams,* 64 Cal.App.2d 279, 282 [148 P.2d 419], "we find no facts in the record before us justifying a conclusion that the plaintiff failed to exercise due dili-

gence during the five year period, or as a matter of fact, after that period had expired. Nor are any subsequent developments shown which justify the conclusion that the defendant has in any way been led to change his position or that the plaintiff should no longer be entitled to collect his judgment.'' The respondent's affirmation ''That at this late date to now permit execution to issue would work a grievous injustice upon affiant,'' is not explained; on the contrary, it appears that the denial of this statutory remedy to the appellant has, indeed, worked a grievous injustice, which if permitted to stand as a precedent would almost entirely nullify the provisions of the statute. The respondent's final contention that the appellant did not have a collectible interest in the judgment, was apparently not urged in the court below, and in any event, appears to be without substantial merit.

The order appealed from is therefore reversed and the superior court is directed to issue a writ of execution upon the judgment in question.

York, P. J., and White, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 11, 1946. Gibson, C. J., did not participate.