[Civ. No. 15520.   Second Dist., Div. Two.   Nov. 6, 1946.]

BESSIE R. LONG, Respondent, v. CHAS. LONG, Appellant.

Goldwater & Murcell, William Ellis Lady and George F. Sharp for Appellant.

Jones & Wiener for Respondent.

WILSON, J.—Feeling aggrieved by being required to satisfy a just obligation as the result of an order made pursuant to section 685 of the Code of Civil Procedure directing the issuance of an execution to enforce a judgment for alimony that has been accumulating for more than 14 years, none of which has been paid, defendant has appealed from the order. Since it is within the discretion of the court to determine whether the applicant for the issuance of an execution has stated sufficient reasons for having failed to proceed under section 681 (§ 685, *supra; Corcoran* v. *Duffy*, 18 Cal.App.2d 658 [64 P.2d 735]; *Shields* v. *Shields*, 55 Cal.App.2d 579, 582 [130 P.2d 982]) and since the court, in the exercise of its discretion, has determined that the reasons given therefor are sufficient, no question concerning the order arises unless the court has abused its power. (*McNabb* v. *McNabb*, 47 Cal.App.2d 623, 627 [118 P.2d 869]; *McClelland* v. *Shaw*, 23 Cal.App.2d 107, 109 [72 P.2d 225].) Therefore, the only question before us is whether the court properly exercised its discretion in finding that the affidavits presented a sufficient excuse for respondent's delay beyond the period of five years in applying for an execution.

On February 11, 1931, respondent filed her complaint seeking a divorce from appellant on the ground of cruelty. Defendant filed his answer on February 25. After a hearing on an order to show cause at which both parties and their at-

torneys were present the court made an order on March 5, 1931, directing appellant to pay respondent $10 per week for her support. Payments were made as required by this order until October, 1931, when appellant departed for Arkansas. An interlocutory decree of divorce was entered on March 14, 1932, in which appellant was ordered to pay plaintiff the sum of $10 per week for her support until further order of the court, and the community property of the parties was awarded to respondent. On June 10, 1932, respondent filed an affidavit for an order directing defendant to show cause why he should not be punished for contempt by reason of his failure to make any payment on account of alimony and to deliver possession of the community property awarded to her by the interlocutory decree. Apparently, the order was not served since there is no evidence of service in the record. On November 22, 1932, she filed a similar affidavit on which an order to show cause was issued and personally served on appellant, returnable on December 8. On the latter date appellant did not appear, a bench warrant was ordered, and an attachment for his arrest was issued. The attachment was delivered to the sheriff on December 9, but by reason of appellant's absence from the state, as will hereinafter appear, he was not taken into custody until February 16, 1934. On that date the order to show cause in *re* contempt came on for hearing, defendant being present with his attorney. The hearing of the order was continued until February 28, appellant was released on his own recognizance and was instructed to return on that date. On the latter date neither appellant nor his counsel appeared, and a bench warrant was ordered to issue for his apprehension. The warrant was never served. Appellant, according to his affidavit, was absent from the state from February to October, 1934.

On November 16, 1945, respondent filed a notice of motion for an order for the issuance of an execution pursuant to section 685 of the Code of Civil Procedure for the total amount that had accrued under the decree, accompanied by an affidavit setting forth the amounts due and unpaid, and stating the reasons for her failure to have an execution issued sooner.

Counteraffidavits were filed on behalf of appellant and after a hearing the court, on March 11, 1946, made an order granting respondent's motion and directing the issuance of

an execution. It is from the latter order that the appeal is taken.

In respondent's affidavit, after setting forth her efforts made through contempt proceedings, as above outlined, to compel appellant to comply with the interlocutory decree, she states that she was forced to apply to the county of Los Angeles for relief; that she enlisted the aid of county officials to assist her in locating appellant and that they were unable to obtain any information concerning his residence, business, or assets; that she was without funds with which to employ persons to search for him; that from 1935 to 1942 she was "on relief" under the Works Progress Administration, and during that time her case history was in the hands of said administration; that in 1942 her "case" (for public aid) was transferred to the Failure to Provide Department of the county of Los Angeles; that all efforts made by the public officials to ascertain the whereabouts of appellant and of any assets belonging to him were unsuccessful; that subsequently to 1942 she received information that appellant was residing in Sacramento; that an attorney in that city was consulted, but appellant departed before he could be served with judicial process and before any assets belonging to him could be located; that in 1944 she learned of his residence in Oakland and thereafter ascertained that he was possessed of property within the jurisdiction of the court subject to execution. Respondent's affidavit satisfies the burden resting upon her under section 685 and shows sufficient diligence in her endeavor to find appellant and his property during the 5-year period following the entry of the judgment and thereafter until her application for a writ of execution was filed.

In resistance to respondent's attempt to collect her judgment appellant filed an affidavit containing allegations outlined as follows (contemporaneous occurrences not contained in the affidavit being in parentheses) : That in October, 1931 (after having filed his answer in this action, thereby submitting himself to the jurisdiction of the court), he established his residence in Arkansas (payments required by the preliminary order ceased at this date), where on March 21, 1932, he secured a decree of divorce from respondent (she had obtained an interlocutory decree one week previously in the instant case) ; that on April 23 of that year, one month after the alleged Arkansas divorce, he married another woman;

that in May following he returned to Los Angeles County where he resided until February, 1934 (at this time he was apprehended under the bench warrant); that he then obtained employment outside California for about eight months (this was when he failed to appear after having been released on his own recognizance); that in June, 1935, he established a residence in Sacramento where he engaged in a business owned and operated by him and known as Long's Bakery; that thereafter he acquired real and personal property in Sacramento, including automobiles and delivery trucks which were registered with the Division of Motor Vehicles under the names of Charles Long and Lyland Long, the latter being the woman whom he married after procuring the alleged divorce in Arkansas; that he was registered as a voter in Sacramento, and that his name was listed in the telephone directory and in the city directory of that city as well as with the City License Department; that he was also listed in the assessor's and tax collector's offices of both the city and the county of Sacramento, and also with the State Board of Equalization as an employer; that he was well known to the bakery trade and to suppliers of wholesale bakery goods; that since 1940 he has resided and maintained his business in Oakland where he has been similarly registered in directories and in public offices. Respondent states in her affidavit that when she ascertained his whereabouts he left Sacramento before she could proceed against him.

The briefs do not refer to anything in the other affidavits and we have found nothing that would add to appellant's defense against the order.

Diligence is required, but not extreme diligence, in attempting to enforce a judgment. The mere lapse of time is not in itself a sufficient ground for the denial of respondent's motion. (*Welk* v. *Conner,* 102 Cal.App. 286, 287 [282 P. 963]; *Faias* v. *Superior Court,* 133 Cal.App. 525, 529 [24 P.2d 567]; *Harlan* v. *Harlan,* 154 Cal. 341, 343 [98 P. 32]; *Doehla* v. *Phillips,* 151 Cal. 488, 494 [91 P. 330].) The failure of a judgment creditor to take action to collect a judgment within five years after its entry is not a ground for refusing to grant a motion for the issuance of an execution (*Butcher* v. *Brouwer,* 21 Cal.2d 354, 357 [132 P.2d 205]; *Doehla* v. *Phillips, supra,* p. 495; *Demens* v. *Huene,* 89 Cal. App. 748, 752 [265 P. 389]), and the fact that at some time during the 5-year period subsequent to the date of entry of

judgment appellant may have had property that could have been levied on pursuant to section 681 is not a sufficient reason for a denial of relief under section 685. (*Demens* v. *Huene, supra*, p. 754; *Palace Hotel Co.* v. *Crist*, 6 Cal.App. 2d 690, 694 [45 P.2d 415]. See, also, *Water Supply Co.* v. *Sarnow*, 6 Cal.App. 586, 588 [92 P. 667].) Orders have been sustained for the issuance of executions after 20 years (*Weldon* v. *Rogers*, 159 Cal. 700 [115 P. 464]); after 19 years (*Peers* v. *Stoll*, 32 Cal.App.2d 511 [90 P.2d 119]); after 16 years (*Troendle* v. *Clinch*, 74 Cal.App.2d 480 [169 P.2d 55]; *McClelland* v. *Shaw*, 23 Cal.App.2d 107 [72 P.2d 225]); after 14 years (*Bredfield* v. *Hannon*, 151 Cal. 497 [91 P. 334]; *Doehla* v. *Phillips*, 151 Cal. 488 [91 P. 330]; *Helvey* v. *Castles*, 73 Cal.App.2d 667 [167 P.2d 492]; after 13 years (*Welk* v. *Conner*, 102 Cal.App. 286 [282 P. 963]); after 12 years (*Mohr* v. *Riccomi*, 14 Cal.App.2d 416 [58 P.2d 659]; *Corcoran* v. *Duffy*, 18 Cal.App.2d 658 [64 P.2d 735]; *Crowley* v. *Superior Court*, 17 Cal.App.2d 52 [61 P.2d 372].)

▪ The fact that this judgment is for amounts payable periodically for an indefinite term is not a defense. Judgments awarding support for the wife or children, or both, are enforceable after five years. (*Harlan* v. *Harlan*, 154 Cal. 341 [98 P. 32]; *Saunders* v. *Simms*, 183 Cal. 167 [190 P. 806]; *Crowley* v. *Superior Court, supra; McNabb* v. *McNabb*, 47 Cal.App.2d 623 [118 P.2d 869]; *Shields* v. *Shields*, 55 Cal.App.2d 579 [130 P.2d 982].)

▪ The doctrine of laches can be invoked only where by reason of plaintiff's acts the allowance of the claim would work an unwarranted injustice. (*Hovey* v. *Bradbury*, 112 Cal. 620, 625 [44 P. 1077].) ▪ Laches in legal significance is not mere delay, but delay that works a disadvantage to another. (*Carr* v. *Sacramento Clay Products Co.*, 35 Cal. App. 439, 449 [179 P. 446]; *Demens* v. *Huene, supra*, p. 754; *Cahill* v. *Superior Court*, 145 Cal. 42, 46 [78 P. 467].) ▪ It is only stating a truism to say that one who is able to do so should pay his debts. Appellant does not deny his financial ability; on the contrary, his affidavit discloses his ownership of property of great value. Notwithstanding this fact he has systematically avoided payment for 14 years, during which time respondent was without means with which to search for him. He has flouted the court and has absented himself from the state on two occasions to avoid the consequences of his disobedience of the court's orders. He now reveals no valid

excuse for his failure to discharge his legal obligation. No reason appears why in equity and good conscience he should not be required to pay what he justly owes. "In determining what will constitute such unreasonable delay, regard will be had to circumstances which justify the delay, to the nature of the case and the relief demanded, and to the question whether the rights of the defendant, or of other persons, have been prejudiced by such delay." (*Cahill* v. *Superior Court, supra.*)

Appellant presents as a defense to the payment of the judgment the fact that he has remarried and that such property as he now possesses is the community property of himself and his present wife. He contends that these facts are circumstances which would justify the court in denying respondent's right to recover the amount due under the judgment. The unsoundness of this defense is twofold: (1) The validity of the alleged decree of divorce that he obtained in Arkansas and as a consequence the legality of his second marriage are matters of such uncertainty that we do not regard his present status to be of such significance as to impair in the slightest degree respondent's right to be paid her due. Appellant went to Arkansas after he had filed his answer in the instant case and had become subject to the jurisdiction of the California courts; the interlocutory decree was granted to respondent prior to the decree in Arkansas; he married and returned to California immediately after obtaining his purported decree. The filing of the divorce action in Arkansas so soon after arriving there and his quick return to California give rise to serious doubt as to the bona fides of his residence in Arkansas. (2) His second marriage, conceding its validity, does not exempt him from providing the support to respondent that the court ordered him to pay. His responsibility is not extinguished by his acquisition of an additional wife.

Respondent acted with such diligence as was within her power. Government and county officials assisted in her endeavor to find appellant, but without result. She should not be penalized for failure to do more than the record reveals to have been done. Appellant was not led to change his position by the delay, and he was not prejudiced thereby. His own conduct was the cause of respondent's inability to satisfy her judgment sooner. His affidavit shows the value of

his property to have been sufficient to enable him to pay the amount due many years ago. The exercise of sound discretion requires the enforcement of the judgment.

Order affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1946.