[Civ. No. 15657.   Second Dist., Div. One.   Mar. 31, 1947.]

FIRST NATIONAL BANK OF CHICAGO (a Corporation), Appellant, v. DANIEL B. SCULLY, Respondent.

Bickler, Smith, Parke & Catlin, Catlin & Catlin, Frank D. Catlin and Henry W. Catlin for Appellant.

Lawrence F. Edmisten, Jr., for Respondent.

YORK, P. J.—This is an appeal from an order denying plaintiff's motion of July 3, 1946, for issuance of an execution of a judgment after five years under section 685 of the Code of Civil Procedure.

The within action to collect on a promissory note executed by respondent Scully in favor of appellant corporation was reduced to final judgment on February 19, 1934. Execution duly issued thereon and was returned unsatisfied on March 12, 1934. The affidavit of appellant's counsel in support of the motion of July 3, 1946, avers that respondent judgment debtor was examined on April 24, 1934, at which time he asserted he had no assets exempt from execution; that affiant was then "unable to find any property that was subject to

execution or that was not exempt from execution, although Mr. Scully at that time promised that he would pay the judgment whenever he obtained the money and would keep affiant advised.'' That thereafter affiant ''attempted to get said judgment debtor in for further examination'' and orders for his appearance made returnable on September 26, and November 29, 1938; February 27, April 12, and June 27, 1939, were ''compelled to go off calendar'' because service could not be made upon the judgment debtor; that ''affiant was informed and believed that said judgment debtor had left the State of California and was residing outside the State of California and that he continued to reside outside of the State of California and in the State of Illinois for long periods of time between 1934, and 1946; and . . . that he is now in the County of Los Angeles, State of California.'' It is also averred that affiant checked the Los Angeles County assessment rolls for each of the years 1934, 1935, 1936, 1937 and 1938 and could find no property assessed to said judgment debtor; also that because of judgment debtor's promise to pay the judgment when he obtained the money and affiant's lack of success in his search of the assessment rolls, the latter believed any further effort on his part would be futile; further that affiant ''is informed and believes that said judgment debtor, subsequent to his first examination herein has collected and now has in his possession or under his control, cash, bank accounts and other personal property which he accumulated from a trust fund, or which was distributed to him from the estate of his father,'' and from the estate of Wilhelm, as well as 150 shares of D. B. Scully Syrup stock, ''all of which is not exempt from execution.''

Respondent Scully's affidavit in opposition to the motion avers that in response to an order he appeared in court on April 24, 1934, for examination concerning his property, at which time he answered fully concerning the same; that no other order for his appearance to answer concerning his property had ever been served upon him until February 21, 1946, which order was subsequently set aside. Affiant then avers that he has been a resident of Los Angeles County, State of California, from the year 1929, to the date of said affidavit, except for a period of 11 months when he resided in Visalia, California; that he was domiciled and resided in Westwood, California, during the years 1931 to 1938, inclusive, during which time he was served with a copy of the complaint and

summons in this action and with a copy of the order for supplemental proceedings of April 24, 1934; that during the latter part of 1938, he moved to Beverly Hills where he resided until 1939; that from the year 1939, to and including 1945, he was domiciled and resided in the San Fernando Valley, except for about 11 months during 1941 and 1942, when he was residing at Visalia and where he conducted a Pilot Training School for the United States Air Corps; that from 1945, to the date of the affidavit (July 10, 1946) he resided at Hermosa Beach, California; that whenever he moved he left a forwarding address with the postal authorities; that since April 24, 1934, to and including February 21, 1946, he had never received any letter or communication from appellant corporation or from anyone on its behalf concerning the instant action or any matter connected therewith; that he was registered on the assessment rolls of Los Angeles County from 1934 to date, paid all assessments levied against him during that period and filed for his veteran's exemption each year. That during such period, affiant purchased new automobiles in his own name, free and clear of encumbrance, which were registered with the Motor Vehicle Department of the State of California, to wit: In 1936, an Oldsmobile 8 Sedan; 1937, LaSalle Convertible Coupe; 1939, a Pontiac 8 Sedan; 1941, a Pontiac 8 Coupe; 1942, Buick 8 Convertible Coupe, which "continues to be registered in his name up to and including the present time." It is further averred that in 1937, a partial distribution in the estate of affiant's father was made from which he received approximately $75,000 in cash and securities; that due to a bad business venture entered into by him he incurred a number of debts, including the judgment herein; that "due to the wide publicity given this partial distribution on the front pages of the Chicago papers, by reason of the fact that Daniel B. Scully, Sr., had been a citizen of great wealth and prominence, the creditors, above referred to, of defendant, immediately began to make demands for payment and defendant advised his counsel to take care of the settlement of all of these claims; that defendant paid out approximately $30,000.00 in the payment of claims made and was advised by his counsel at Chicago, that all claimants had been satisfied; that defendant believed and continued to believe until on or about February 21, 1946, at which time he was served with a copy of the order for supplemental proceedings, that the judgment of plaintiff in this action had been satisfied along with all

of the other creditors; that plaintiff must have been advised through this wide publicity on the front pages of the Chicago newspapers of this partial distribution; that according to defendant's best information and belief, he advised the attorney for plaintiff at the hearing on April 24, 1934, that a partial distribution of his father's estate would be made during the year 1937; that defendant is at a loss to understand why plaintiff failed to use diligence in satisfying this judgment when said partial distribution must have been known to plaintiff or its attorney, or both.'' That from 1934, to date, affiant was a registered voter of the city and county of Los Angeles; that during the years 1937, 1938, 1943, 1944, and 1945, affiant was listed in the local telephone directory; in 1941 and 1942, he was listed in the Visalia telephone directory; and from 1945, to date in the Hermosa Beach directory; that during 1935, affiant was secretary of the Advance Petroleum Company, with offices at Los Angeles and held a 15 per cent interest in that company; during 1936 and 1937, he was sales manager for the Parkerite Company, a metal alloy company of Los Angeles, receiving therefor $135 per week; that during the years 1937 and 1938, affiant owned the lease and equipment of the Long Beach Arena and was promoter of fights there, being prominently mentioned in the press during that period; that he sold his lease and equipment in 1938, for $7,000 and in 1941, became part owner of a pilot training school at Visalia, California, and was employed there for about 11 months at $400 per month; that in April, 1942, he sold his 10 per cent interest in said school for $20,000; and in April, 1943, bought a ranch in Canoga Park, California, in the name of himself and wife, which he sold in 1945, for $26,000; that said property remained in the name of affiant and his wife for approximately 2½ years and was assessed to them; that from about 1935, until the year 1945, affiant received a yearly income of approximately $11,000 from the trust estate of his father, over and above any distributions made from said trust estate during that time; that appellant judgment creditor has made no effort since April 24, 1934, until on or about February 21, 1946, to collect said judgment or to contact said affiant by telephone, letter or otherwise; that if said creditor had made any effort to contact affiant, the latter would have been in ·a financial position to have satisfied said judgment; that said creditor has failed to do anything toward the collection of said judgment since April 24,

1934, "and has allowed said judgment to rest dormant and uncollected."

Section 681 of the Code of Civil Procedure provides that "The party in whose favor judgment is given may, at any time within five years after the entry thereof, have a writ of execution issued for its enforcement." This section of the code was complied with by appellant which had a writ of execution issued shortly after the judgment herein became final, to wit: on March 12, 1934, but the same was returned unsatisfied: On April 24, 1934, appellant without success examined respondent concerning his property, pursuant to the supplemental proceeding provided by section 714 of the Code of Civil Procedure. Thereafter within the five-year period, i. e., 1934 to 1939, inclusive, appellant unsuccessfully attempted to further examine respondent concerning his property, for the reason that *service could not be made upon him* of the five orders for his appearance which were made returnable on the dates heretofore mentioned.

The instant motion was made pursuant to section 685, Code of Civil Procedure: "In all cases the judgment may be enforced or carried into execution after the lapse of five years from the date of its entry, by leave of the court, upon motion, and after due notice to the judgment debtor accompanied by an affidavit or affidavits setting forth the reasons for failure to proceed in compliance with the provisions of section 681 of this code. The failure to set forth such reasons as shall, in the discretion of the court, be sufficient, shall be ground for the denial of the motion. . . ."

■ Appellant urges that the court abused its discretion in denying its motion because the reasons presented amount to an honest, sensible and logical explanation of its failure to obtain an execution within the five-year period.

As was aptly stated in *Hull* v. *Santino,* 68 Cal.App.2d 300, 301 [156 P.2d 946] : "The question raised by this appeal is whether the court abused its discretion in refusing to authorize the issuance of the writ of execution. If no abuse is found, this court may not set aside the order. The problem which the trial judge was called upon to solve was whether the creditor has exercised due diligence, under the circumstances of this case, in attempting to enforce his judgment during the five-year period. As stated in *Beccuti* v. *Colombo Baking Co.,* *supra,* at page 363 [21 Cal.2d 360 (132 P.2d 207)], 'Whether

he has exercised such diligence is, by the express provisions of the statute, for the trial court to determine in its discretion. And an order made under such authority will not be disturbed upon appeal unless it clearly appears that the determination constitutes an abuse of discretion. (*Butcher* v. *Brouwer, supra.* [21 Cal.2d 354 (132 P.2d 205])' "

"But if the facts show of a certainty that, had the judgment creditor exercised even slight diligence in making inquiry concerning the circumstances of the judgment debtor, he would have discovered property subject to execution, the exercise of sound discretion requires the court to deny the motion." (*Beccuti* v. *Colombo Baking Co.,* 21 Cal.2d 360, 363 [132 P.2d 207].)

Having in mind the averments of the affidavit filed on behalf of appellant in support of the motion that "service could not be made upon the judgment debtor" during the years 1938 and 1939; and that a check of the Los Angeles County assessment rolls for the years 1934 to 1938, inclusive, failed to disclose any property assessed to respondent judgment debtor; and also keeping in mind the averments of respondent's affidavit, heretofore recited in detail, that he maintained a continuous residence in Los Angeles County from 1929 to date, except for eleven months in 1941 and 1942; that he was a registered voter of the said county from the year 1934, forward and was listed in the Los Angeles city telephone directory in 1937, 1938, 1943, 1944 and 1945; that from 1936, he was the frequent purchaser of new automobiles all of which were registered in his name with the State Motor Vehicle Department; that during 1935, 1936 and 1937, he was employed by and owned substantial interests in two companies operating in Los Angeles city; that during 1937 and 1938, he owned the lease upon the Long Beach Arena, where he promoted fighting matches, and which he sold in 1938 for $7,000; and that for the ten-year period from 1935 to 1945, he received an annual income of approximately $11,000 from a trust estate,—it can hardly be said that appellant exercised due diligence in making inquiry concerning the circumstances of the respondent. Under the facts presented by the record herein, even slight diligence on the part of appellant in making inquiry concerning respondent would have resulted in the discovery of property subject to execution. Therefore, there

was no abuse of discretion by the trial court in denying the motion.

For the reasons stated, the order appealed from is affirmed.

White, J., concurred.

DORAN, J.—I dissent for the reasons appearing in *John P. Mills Organization, Inc.* v. *Shawmut Corp,* *(Cal.App.) 171 P.2d 937.

Appellant's petition for a hearing by the Supreme Court was denied May 26, 1947.

---

*In *John P. Mills Organization, Inc.* v. *Shawmut Corp.,* a hearing was granted by the Supreme Court on October 14, 1946, and the final opinion of the Supreme Court was reported in 29 Cal.2d 863 [179 P.2d 570].