[Civ. No. 15889. Second Dist., Div. One. Mar. 2, 1948.]

ELLEN JAMES, Plaintiff and Appellant, v. WHITNEY SAPP JAMES, Defendant and Appellant.

Roy A. Linn for Plaintiff and Appellant.

John H. Poole for Defendant and Appellant.

YORK, P. J.—Both plaintiff and defendant appeal from the order of October 14, 1946, whereby the court denied the motion of plaintiff for a writ of execution to enforce an interlocutory decree of divorce entered on November 20, 1928, requiring defendant to pay to plaintiff $50 per month as alimony, and whereby the court also denied the motions of defendant to quash execution.

Plaintiff's motion for issuance of execution under section 685, Code of Civil Procedure, was made to enforce the payment of alimony for the period from November 1, 1928, to and including August 1, 1941. In addition to such motion, plaintiff also filed a petition for the issuance of such writ of execution pursuant to section 685, *supra.*

In support of the motion and said petition, plaintiff filed her affidavit dated July 26, 1946, which avers that both the interlocutory and final decrees of divorce provide for the payment to her of $50 per month beginning November 1, 1928, but that defendant has made no payments whatsoever, although affiant has made numerous requests and demands for such payment; that defendant has always told affiant that he had no funds and could not make such payments; that affiant was unable to discover any funds from which she could collect by means of execution; that prior to 1943, defendant was an automobile salesman and affiant was unable to find any property upon which she could levy execution; that on February 28, 1943, affiant moved to, and since that time has been a resident of, Macomb, Illinois; that at no time has affiant had sufficient funds to attempt to locate any property of defendant; that affiant relied upon defendant's representations that he had no money and could not pay the alimony; that defendant stated he was unable to support their two children and caused affiant to send them to the home of defendant's sister. Plaintiff further avers that she "has just ascertained that the defendant had become the owner of a new and used automobile business known as the James Motor Company;

that said defendant is a Dodge and Plymouth dealer; that plaintiff had not known these facts and had been unable to ascertain them sooner. That in order to prevent the plaintiff from attempting to collect said alimony defendant has represented to plaintiff and convinced plaintiff that he had no funds and no property and that he was unable to make the $50.00 a month payments to plaintiff herein. That by reason of his representations of no funds, and no property the defendant prevented the plaintiff from levying execution and thereby collecting her alimony. That the defendant, within the past few years, has made large sums of money and has invested same in the automobile business and is in a position to pay said back alimony.''

In opposition to plaintiff's motion, defendant filed his affidavit in which it is averred that ''at no time has plaintiff exercised the diligence necessary to entitle her to have execution issue on the judgment in this matter should she be otherwise entitled thereto''; that at frequent intervals since 1928, affiant and plaintiff had ''seen each other or conversed with each other''; that ''plaintiff has at all times been able to locate defendant either through her own knowledge and conversations with defendant or by reason of her constant contact with defendant's family and relatives. That from the years 1930 to 1936 affiant was employed by the Merchant's Protective Agency of Kansas City and was earning in excess of $300.00 per month. That in 1936, plaintiff met affiant in Peoria, Illinois, and took him to his mother's home in Macomb, Illinois, where plaintiff was then residing. That at that time plaintiff suggested that she and affiant forget their differences and remarry. That from the years 1936 to 1941 affiant was employed in Los Angeles by the Commercial Discount Company and was earning in excess of $400.00 per month. That plaintiff was familiar with affiant's whereabouts and had plaintiff caused records to be searched the records would have revealed automobiles standing in affiant's name. That from the years 1941 to 1945 affiant was employed by Falws & McGhie, automobile dealers, as their manager and was earning in excess of $400.00 per month. That plaintiff was familiar with affiant's occupation and failed to take any action. That from time to time since 1936, affiant had a side business in selling used cars which he bought with his own funds. That plaintiff was familiar with this business and at one time telephoned affiant to determine whether he

would sell her an automobile more cheaply than she could obtain one elsewhere. That at no time has affiant hidden any assets from plaintiff and has at no time avoided plaintiff. That plaintiff never sought execution of her claims for alimony for the reason that under an agreement with affiant's sister, plaintiff agreed to forego such claims as long as affiant's sister took the minor children of the parties hereto into her home and gave them an education. That from time to time affiant's sister and brother-in-law supported plaintiff and gave her money although they were under no obligation so to do. That this was done by reason of the friendliness which arose by virtue of the working of said agreement and the mutual satisfaction obtained therefrom. That plaintiff preferred to accept the benefits of the said agreement to the right to the amounts allowed her under the decrees in this action.

"That the only time which affiant can recall in which the plaintiff requested money from him occurred in 1942 or 1943 when the plaintiff called affiant by telephone and stated that she was going East and asked if he would give her $150.00 to help her. That affiant refused such request, not on the grounds that he had no funds but on the grounds that he understood that his sister had sent her money for the trip and that if he gave her any she would spend it uselessly.

"That plaintiff has stated no reason why she did not seek execution under section C.C.P. 681 and affiant reasserts the reason was because plaintiff was accepting benefits greater than she would have obtained had she sought execution."

Thereafter, to wit, on October 11, 1946, plaintiff filed a counteraffidavit in which she averred that in 1929, she attempted to collect from defendant through orders to show cause and became convinced that he was then without funds or property; that thereafter defendant went to Kansas City and was employed in the middle west from 1930 to 1936, and that she did not know what he was earning; that he never informed her of his earnings during that period; and that during said time he was without the jurisdiction of the California courts. That she did not know where he was employed from 1936 to 1941, never knew what his earnings were and that defendant at all times informed her that he was barely making enough to exist and that he had no property; that defendant "has at all times hidden from plaintiff any property that he might have and that affiant never knew defendant

was operating a side business of selling used cars''; that she never agreed to forego any of her claims under the alimony judgment and that she did not obtain greater benefits than she would have obtained had she sought execution; that on the insistence of defendant's sister, Mrs. R. J. Neal, affiant ''permitted both her children to live with Mrs. Neal. That affiant was never asked to waive any of her rights under the judgment herein and never did waive any rights under said judgment. That this affiant resided in the home of Hazel J. Neal and also resided in the home of defendant's mother about two years in the capacity of housekeeper without compensation. That affiant was told by defendant W. S. James on many occasions that he was barely breaking even and that he had no money, and upon occasions he asked this affiant to loan him money as he was having trouble supporting himself.

''That no agreement whatsoever was ever entered into between plaintiff and members of defendant's relatives, wherein the relatives would provide support and education for the children in lieu of the sum to which plaintiff was entitled by reason of the divorce decree. That the support of the children was not made in consideration that the plaintiff would take no steps to enforce the decree or until the children reached their majority. That no agreement in reference to waiver of alimony was ever discussed between the plaintiff and the defendant or between the plaintiff and the defendant's sister.'' Plaintiff also averred that she was away from the State of California from the fall of 1933 to February. 1937, and from February 28, 1943, to date of making the instant affidavit, and that during these periods she remained in Macomb, Illinois.

''That said defendant, because of his absence from the State and because of his claiming that he had no funds and could not support the affiant herein and could not make the payments of alimony and because of the absence of affiant from the State of California from 1933 to 1937 and since February 1943, as aforesaid, and because of misrepresentations by the said defendant and the representations that he was without funds to make any payments and because of his insistence that said children be left with the sister of said defendant and his statements that he could not afford to pay for their support, and affiant believing said statements, this affiant affirms that she was excused from making any effort to reach the property of this defendant, having no knowledge of same and no money to expend for a search.''

Plaintiff submits that the trial court abused its discretion in refusing to issue execution under section 685, Code of Civil Procedure, because (1) any attempt on her part to have execution levied during the first five years when defendant was absent from California would have been an idle act; (2) that the reasons presented by her for not obtaining an execution during the five-year period are sensible and logical; and (3) the judgment has never been satisfied or paid.

Our Supreme Court held in *John P. Mills Org.* v. *Shawmut Corp.*, 29 Cal.2d 863, 864 [179 P.2d 570], that "A judgment creditor seeking to enforce his judgment more than five years after its entry must show, by affidavit, that he exercised reasonable diligence to enforce his judgment during the statutory period in which he might have obtained a writ of execution as a matter of right. *(Butcher v. Brouwer,* 21 Cal.2d 354 [132 P.2d 205] ; *Beccuti* v. *Colombo Baking Co.,* 21 Cal.2d 360 [132 P.2d 207] ; *Hatch* v. *Calkins,* 21 Cal.2d 364 [132 P.2d 210].) Whether he exercised due diligence is for the trial court to determine in its discretion, and its decision upon conflicting affidavits will not be disturbed. *(Beccuti* v. *Colombo Baking Co., supra; cf. Kraner* v. *Snow Mountain W. & P. Co.,* 203 Cal. 126, 127 [262 P. 1094].)"

In *McNabb* v. *McNabb,* 47 Cal.App.2d 623, 627 [118 P.2d 869], it was stated: "The discretion referred to in this section (685, Code Civ. Proc.) is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles and intended to subserve and not to impede or defeat the ends of substantial justice. If, on appeal, it be doubtful whether the excuse offered is sufficient or not the judgment of the trial court will not be disturbed, and its decision will not be reversed except for a clear abuse of discretion. *(McClelland* v. *Shaw,* 23 Cal. App.2d 107 [72 P.2d 225].)"

The motion here under consideration was made to enforce execution as to the alimony payments falling due within the period from November 1, 1928, to and including August 1, 1941. Plaintiff's affidavit avers that in 1929, she attempted to collect through orders to show cause and became convinced that defendant was then without funds or property. It is undisputed that defendant was absent from this state from 1930 to 1936, and that plaintiff also was away from California from the fall of 1933 to February, 1937, and again from February, 1943, to about October 1, 1946. It is

apparent from this that both parties were within the jurisdiction of the courts of this state from February, 1937, to February, 1943, during which period defendant avers he was working and earning in excess of $400 per month.

If it be conceded that it would have been an idle act for her to attempt to execute on her judgment during defendant's absence from California, as plaintiff now contends, it must also be conceded that for the succeeding six years intervening from February, 1937, to February, 1943, plaintiff failed to use the slightest diligence to uncover assets of defendant subject to execution. Apropos of this phase of the case, the Supreme Court in *Butcher* v. *Brouwer*, 21 Cal.2d 354, 357 [132 P.2d 205], construed section 685, Code of Civil Procedure, as amended in 1933, to the following effect:

"Section 685 of the Code of Civil Procedure, before it was last amended, provided in part as follows: 'In all cases the judgment may be enforced or carried into execution after the lapse of five years from the date of its entry, by leave of the court, upon motion . . .' As so worded, it has many times been construed by the appellate courts which held that although the enforcement of a dormant judgment by execution issued in response to the creditor's motion was a matter within the sound discretion of the trial court . . . mere lapse of time was not in itself a sufficient ground for the denial of the motion. . . . Nor did the failure of the judgment creditor to make any effort to enforce his judgment within five years after its entry, or at a later time, afford a ground for the denial of the motion. . . . And the motion was properly granted although, during the five years following the judgment, the judgment debtor possessed property which could have been discovered and subjected to the judgment. . . . As a practical matter, therefore, by this construction of the statute a creditor, almost as a matter of right, might obtain an execution many years after the five-year period fixed by section 681.

"In 1933, the Legislature added to the section the requirement that a creditor desiring an execution at a time more than five years following the entry of judgment must make his motion 'after due notice to the judgment debtor accompanied by an affidavit or affidavits setting forth the reasons for failure to proceed in compliance with the provisions of section 681 of this code. The failure to set forth such reasons as shall, in the discretion of the court, be suffi-

cient, shall be ground for the denial of the motion.' Section 681 provides: 'The party in whose favor judgment is given may, at any time within five years after the entry thereof, have a writ of execution issued for its enforcement.'

"Considering the strict construction against the debtor which the appellate courts had placed upon section 685 before the change and the requirements added at that time, it is clear that the principal object of the new enactment was to place upon a creditor seeking to enforce a judgment more that five years after its entry, the burden of showing why he was not able to satisfy his claim within the statutory period during which he is entitled to an execution as a matter of right. (§ 681, Code Civ. Proc.) . . . in view of the legislative and judicial history of section 685, its present provisions should be construed as authorizing the court to give a creditor an execution only if, during the five years following entry of judgment, he exercised due diligence in locating and levying upon property owned by the debtor, or in following available information to the point where a reasonable person would conclude that there was no property subject to levy within that time. *And even though the creditor may have satisfied the court that he has proceeded with due diligence to enforce his judgment under section 681, the court may still deny him its process if the debtor shows circumstances occurring subsequent to the five-year period upon which, in the exercise of a sound discretion, it should conclude that he is not now entitled to collect his judgment.*" (Emphasis added.)

In the circumstances here presented, including the conflicting affidavits of the parties, it cannot be said that the court abused its discretion when it denied plaintiff's motion.

 Turning to defendant's cross-appeal from the order of October 14, 1946, denying his motions to quash the writ of execution issued pursuant to order of court on August 30, 1946, it appears from cross-appellant's opening brief that plaintiff (cross-respondent) "obtained on August 30, 1946, an *execution for the period of five years immediately preceding* August 1, 1946, together with interest thereon alleging that no payments had been made on such judgment. Defendant (cross-appellant) sought to quash the issuance of such execution by filing his motion to quash and recall based on *Shields* v. *Superior Court,* 138 Cal.App. 151 [31 P.2d 1045]. . . . Said motion was subsequently denied by stipulation on October 14, 1046." Cross-appellant admits that this court

is bound by the decision in *Lohman* v. *Lohman*, 29 Cal.2d 144, 150 [173 P.2d 657], to the effect that *a creditor is entitled, as a matter of right, to execution on a judgment payable in installments for all amounts which have accrued within five years from the date of the application therefor,* and disapproving *Shields* v. *Superior Court,* 138 Cal.App. 151 [31 P.2d 1045]. (Emphasis added.)

For the reasons stated, the order of October 14, 1946, denying plaintiff's motion for writ of execution and denying defendant's motions to quash execution, is affirmed.

White, J., and Doran, J., concurred.