[Civ. No. 3898.   Fourth Dist., Jan. 3, 1950.]

ROBERT F. PEMBERTON, Plaintiff; MELVA SMITH, as Executrix, etc., Appellant, v. DORA PEMBERTON, Respondent.

Leslie S. Bowden and Morris McLaughlin for Appellant.

Harold A. McCabe for Respondent.

GRIFFIN, Acting P. J.—In 1927, Robert F. Pemberton brought an action for divorce against his wife, Dora Pemberton, on the grounds of extreme cruelty. Custody of their minor child, Robert, aged 1 year, was given to the mother of defendant. Plaintiff was ordered to pay $25 per month for his support. There is no mention or disposition made of any community property. On September 1, 1928, defendant applied for change in custody of the child to her. The husband, Robert F. Pemberton, answered her affidavits and the order to show cause, and upon proper showing she obtained custody by modified decree entered September 28, 1928. By it the husband was ordered to pay $25 per month for the child's

care to the Citizens Bank of Corona. The father made no payments under the order except such claimed payments as will hereinafter be discussed. He died on July 24, 1948.

Defendant wife, as a judgment creditor, on October 29, 1948, filed a motion for leave to file a claim against the estate of deceased, based on the accumulated judgment and accrued interest, on the ground that the judgment was wholly unsatisfied and that the judgment creditor could not, with reasonable diligence, secure payment of the same within five years following its rendition.

The affidavits of defendant supporting the motion, in addition to the above-stated facts, show that the minor child, ever since the entry of said judgment, up to his attaining the age of 21 years on February 23, 1947, was in her custody and control; that one Melva Smith was appointed executrix of his last will and testament; that the defendant, as the mother of the minor child, entirely provided for and cared for him at her own expense and that she made repeated attempts to collect from the deceased the support as provided for in the judgment; that she placed the collection of the same in the hands of her attorney; that at the time she believed that the deceased judgment debtor had no funds from which an execution could be satisfied and no means of paying the judgment except from his earnings, which were intermittent, and that said judgment could not be satisfied; that her attorney advised her to take the matter up with the district attorney and law enforcement officers and that in 1928 she filed a complaint for nonsupport of the minor child in Riverside County, which was subsequently dismissed on condition that he support the child; that she thereafter, in 1931, filed another complaint against him and was informed that defendant in that case could not be located and learned that on January 21, 1935, a warrant of arrest was returned to the court on the ground that the officers were unable to locate the defendant; that during the five-year period following the date of the judgment she was unable to gain any knowledge of any property from which an execution could be satisfied either in whole or in part; that the deceased, the judgment debtor, left the State of California in order to avoid said debt and in order to avoid making payments for the support of his minor child; that she believed that he went to Mexico about the time of the issuance of the criminal complaint and remained there for a period of time in excess of 10 years; that she learned that he, on three or four occasions, was in and

out of California, and did not learn that he had returned or that he had property located in this state until recently; that she was informed that nothing could be done about the support of the minor child or the enforcement of the judgment as long as the judgment debtor remained outside of the State of California; that she believed that because of the lapse of time between the rendering of the judgment and the time she finally learned the judgment debtor had returned to California the judgment could not be collected and that she had no right to it due to the then age of the minor child; and that she did not learn of her rights until she consulted her present attorney.

Melva Smith alleged that she was the qualified and acting executrix of the estate of Robert F. Pemberton, deceased; claimed that the maximum amount of the deceased's estate was about $6,000; that several thousand dollars of other claims had been filed in said estate; that she knew the decedent from April, 1931, until July 24, 1948; that she was a partner and business associate with him in Los Angeles in the garage business; that in 1945, the deceased sold the business and moved to Vista and that he remained there continuously from 1945 until his death; that from April, 1931, until 1945, deceased resided continuously in Los Angeles; that during that interval the minor son visited with his father, having been sent there by the mother; that the mother had knowledge of and knew of his whereabouts and of his business; that the deceased never left the State of California to avoid this claimed debt or for any other reason, and never remained in Mexico for any great period of time but that in 1931 he did take a vacation for a period of two months. She denied that any sum was due under the order; denied that defendant made repeated attempts or any attempts to collect the amount; and that if she had used due diligence her claim and judgment would have been paid; that the father, on numerous occasions, and whenever the son called it to his attention, bought clothes and necessities for the child, gave him money, bought him an automobile, and treated his son as a father should; and that in his will he left him $500; that if the claim of the defendant is allowed the bequest to the son will abate and the estate will be distributed as an insolvent estate; that Robert F. Pemberton, for seven years prior to 1930, was an employee working for a canning company at Buena Park as a fruit buyer; that defendant remarried twice after defend--

ant's divorce from the deceased; that she searched all documents which came into her possession as executrix of the estate of Mr. Pemberton and found four checks, all signed by the deceased, drawn on separate bank accounts, indicating that a check for $20, dated January 17, 1942, was endorsed "Dora Lee," the defendant; that another one for $25, dated February 18, 1942, was similarly endorsed; that another one dated June 20, 1942, for $20 was endorsed by her and Robert Pemberton; that she found in a check-stub book for the year 1941, checks written to Dora Lee, totaling $130; that she knew of her own knowledge that in 1934 the minor son spent a number of days with his father in Long Beach, at which time he was selling real estate in Los Angeles; that in 1935 and 1936, he had other employment there, and that it was there that she and the deceased opened the Witmer Street Garage.

Defendant's attorney filed an affidavit in which he states that through investigation he found that Robert F. Pemberton was the owner of two pieces of property located in San Diego County; that the title was vested, as a matter of record, in Robert F. Pemberton and Melva Smith Pemberton, husband and wife, as joint tenants; that it does not appear that Melva Smith ever was the wife of the deceased; that in the will offered for probate, dated August 14, 1945, Melva Smith is referred to as "Melva Smith," and the will declares that ". . . I am not married" and that "I have one child, Robert Anthony Pemberton"; that he believed that the property in San Diego County was of the reasonable value of $60,000, and was the property of the deceased and was thus held in joint tenancy for the purpose of defrauding the creditor, Dora Landreth (the defendant). Dora Landreth, in reply, states that she at no time knew the whereabouts or address of her former husband until a few months prior to his death; that she had given the law enforcement officers of Riverside all the information she had as to his whereabouts but that they reported they were unable to locate him; that she was without funds to take other steps than she did to enforce the judgment; that about $250 were given by the father *to the child* at various times since 1941, and that she never learned, until recently, that he had property; that the monies or checks were sent directly to the child and used directly by him; that she did not recall endorsing any checks for him; and that she received no money in satisfaction of the judgment.

The minor son's affidavit shows that in 1934 he visited his grandmother at Long Beach and that he saw his father at her house on one or two occasions, but did not know where he was living or of his whereabouts; that during 1941 or 1942, the grandmother arranged for him to see his father, who sent him a few checks, but that his father said: "I am giving this money to you and not to your mother"; that the money was received by him personally and was spent for his own individual wants as a high school boy; that he learned years later that his father was living at Vista; that he visited him there and saw the property, and shortly before his death his father told him that he had been offered $60,000 for one piece of property consisting of about 12 acres, improved with two sets of buildings and planted to avocados and citrus trees, and showed him another piece of property likewise planted, consisting of 10 or 12 acres, which he said he owned; that his mother did not discuss with him matters concerning his father until the last two years; that they ignored all discussions about his father and that he did not tell her what little he knew about him.

Dora Landreth then filed a counteraffidavit stating that she located, among some old papers, a postal card signed by her former husband and addressed in his handwriting, which was received through the mail in 1932, and it was written in Spanish. Interpreted, it reads as follows: "Dear Dora: I am sorry that I did not write you any sooner than I wanted to; as you may know I was killed in an airplane accident, but as you see there was nothing to it only a slight incident and as you may know I am safe and sound. When I arrive in Mexico, the Capital, I will write to you and explain everything and more that I may have to tell you. With all my sincere love I close, love to my boy. (Signed) Your Bob Pemberton." The postmark shows: "Ensenada, B. Cfa. 7 Jan. 32." She further relates that on each of the occasions when she made an attempt to collect the judgment and order, the deceased plaintiff told her and represented to the court and other parties who were attempting to enforce collection, that the deceased was without funds with which to comply with said order to support the minor child and that she believed this all during the period of five years following the date of the order.

Melva Smith then filed a counteraffidavit in which she states that from 1932 until 1948, Robert F. Pemberton owned various and sundry automobiles registered in his name with the

478

Department of Motor Vehicles of the State of California; that between those dates he was the record owner of and had an interest in a lot in San Clemente acquired about the year 1936, a small farm located at Artesia, acquired in 1940, the Colwit Courts in Los Angeles, acquired in 1938, and a house and lot at Newport Beach, acquired that year, and that the property located at Vista was purchased by affiant and deceased in 1945; that the son was in the military service for a period of time unknown to affiant.

Counsel for the executrix moved to strike great portions of the affidavit of Dora Landreth on the ground that they were incompetent, irrelevant and immaterial, and for the reason that they were conclusions and had no evidentiary support or value. This motion was denied. Objection was made to this ruling.

After hearing, the trial court in the divorce action found that the defendant had used due diligence in attempting to enforce the judgment and that from the affidavits it appeared that there were sufficient reasons for failing to secure an execution under section 681 of the Code of Civil Procedure and that the judgment remained unsatisfied *in toto*. The court ordered that the judgment be enforced by execution, including the filing of a claim against the estate of the deceased plaintiff. From this order the executrix appeals.

■ The first point is that the denial of the motion to strike was error because all of the allegations in defendant's affidavits were based on information and belief and hearsay and should have been stricken, and were not proof of the facts stated therein, citing *Kellett* v. *Kellett*, 2 Cal.2d 45, 48 [39 P.2d 203]; and *Pratt* v. *Robert S. Odell & Co.*, 63 Cal.App.2d 78 [146 P.2d 504]; that without said hearsay statements insufficient facts remain to warrant the granting of the motion.

While there were certain portions of the statements in the affidavits which might well have been stricken on the theory that they were conclusions, there were sufficient proper allegations remaining to justify the consideration of their merits.

■ The next point is that there was no due or reasonable diligence disclosed by any portion of these affidavits and that the defendant affirmatively shows thereby that she did nothing for more than 19 years to collect her claimed judgment except to file a criminal complaint for nonsupport, and that when opposed by the affidavits filed by appellant and her uncontradicted averments, even the slightest diligence was not

shown, citing *Butcher* v. *Brouwer,* 21 Cal.2d 354, 358 [132 P.2d 205] ; and *Hatch* v. *Calkins,* 21 Cal.2d 364 [132 P.2d 210].

Section 685 of the Code of Civil Procedure provides that:

"In all cases the judgment may be enforced or carried into execution after the lapse of five years from the date of its entry, by leave of the court, upon motion, and after due notice to the judgment debtor accompanied by an affidavit or affidavits setting forth the reasons for failure to proceed in compliance with the provisions of section 681 of this code. The failure to set forth such reasons as shall, in the discretion of the court, be sufficient, shall be ground for the denial of the motion."

Under this statute the court may grant a judgment creditor leave to enforce his judgment by presenting the claim against the debtor's estate, and by bringing an action thereon if the claim is rejected. (*Saunders* v. *Simms,* 183 Cal. 167 [190 P. 806] ; *Pacific Gas & Electric Co.* v. *Elks Duck Club,* 39 Cal.App.2d 562 [103 P.2d 1030].) But such an order is subject to the same rules applicable to one which authorizes the issuance of execution more than five years after judgment was entered. It may only be made if, during the five years following entry of judgment, the execution creditor exercised due diligence in locating and levying upon property owned by the debtor, or in following available information to the point where a reasonable person would conclude that there was no property subject to levy within that time. (*Lohman* v. *Lohman,* 29 Cal.2d 144 [173 P.2d 657].)

In *Butcher* v. *Brouwer,* 21 Cal.2d 354, 357 [132 P.2d 205], the effect of the 1933 amendment to section 685 of the Code of Civil Procedure (Stats. 1933, p. 2499) is fully discussed. In effect, it was there held that the object of the new amendment was to place upon a creditor seeking to enforce a judgment more than five years after its entry, the burden of showing why he was not able to satisfy his claim within the statutory period during which he is entitled to an execution as a matter of right.

In the Lohman case the majority court held that a creditor is entitled to an execution as a matter of right for all *installments* accruing *within five years* from the date of the application therefor. Accordingly, defendant was entitled to execution and to file a claim against decedent's estate for the five years' accumulation due from decedent immediately

preceding the application of defendant to enforce the judgment in her favor. (See, also, *Atkinson* v. *Atkinson*, 35 Cal.App.2d 705 [96 P.2d 824]; *Taylor* v. *George*, 34 Cal.2d 552 [212 P.2d 505].)

As to the remaining portion of the judgment the competent evidence produced by the affidavits mentioned must be analyzed in the light of the rule stated in *Butcher* v. *Brouwer*, *supra*, to determine whether the defendant met the burden of proof there imposed upon her.

In *Shields* v. *Shields*, 55 Cal.App.2d 579 [130 P.2d 982], an order authorizing the issuance of an execution after five years was sustained upon a showing that the wife had the husband, the judgment debtor, arrested on three separate occasions during the five-year period, for failure to provide for the minor child but with the additional showing that an execution was issued during that period and was returned unsatisfied, and there was the additional showing that the defendant had written her explaining that his ''remissness'' was due to his financial incapacity.

In *McClelland* v. *Shaw*, 23 Cal.App.2d 107 [72 P.2d 225], this court held that the mere fact that the defendant had an equity in property that was greatly incumbered did not deprive plaintiff of his right to enforce his judgment after the lapse of five years, and the fact that the defendant had property during that period out of which the judgment might have been satisfied furnished no ground for the refusal to order the issuance of the execution, citing *Demens* v. *Huene*, 89 Cal.App. 748 [265 P. 389], in which case it was alleged that during the five-year period the judgment debtors were engaged in conducting rooming houses for many years; that they owned and possessed ample personal property, such as furniture and leases; that for three years they possessed an automobile worth the amount of the judgment, which could have been sold to satisfy the judgment through execution, but that no effort was made to levy upon them and that plaintiff knew of these facts. It was there held that under the facts of that case the granting of the order sought was a discretionary matter and that no abuse of discretion appeared.

In *Lohman* v. *Lohman*, *supra*, the majority court sustained an order, which in part denied the issuance of an execution to enforce a judgment for alimony beyond the five-year period because of insufficient showing. The opposition to the motion was based upon the delay in enforcing the provisions of the judgment notwithstanding the creditor's knowledge that her

former husband "was engaged in business in the County of Los Angeles and was solvent." It was shown that the husband, during the period in question, wrote his former wife seeking her "indulgence" in her endeavor to collect the sums due at that time  In effect, it was held that the showing was insufficient to warrant an order for the issuance of the execution for the period in question. However, in *Butcher* v. *Brouwer, supra,* it was held that there was sufficient showing for such an order where two executions were issued within the five-year period and were not enforced because of an order of the court and where, before the issuance of a third execution, the debtor had transferred his property and where the next property acquired by him was so heavily incumbered that nothing could be realized on it by levy of execution.

It must be conceded that the trial court might well have determined that there was sufficient showing made justifying it in denying the application for the order as to the part now under consideration. That, however, is not the question before us. Our question is whether there is any sufficient showing of due diligence on the part of the defendant which might reasonably justify the order and preclude us from saying the trial court abused its discretion.

The order for support was made in 1928. There is no showing that the father made any payments as required. According to defendant's showing, during that year defendant caused a complaint to be filed for nonsupport of the child, which was subsequently dismissed, upon his promise to support the child. The mother was compelled to support it during its minority. She was constantly told by the father that he had no funds. She sought advice of her attorney again in 1931, in another endeavor to collect support for the child, and a warrant was issued and the plaintiff was not located. It was a few months thereafter that she heard from him in Mexico, indicating that he was proceeding farther into Mexico, and she had the right to believe that he was avoiding all processes of the court. There is no showing that any real property was acquired by him until 1936, eight years after the date of the order, when he and Melva Smith entered into a partnership in the garage business in Los Angeles, and there is no allegation that the properties mentioned in her affidavit or the automobiles owned by him, were free and clear of incum-

brances or were subject to execution and sale, or that the equities were sufficient to satisfy defendant's judgment. There is rather convincing evidence, notwithstanding defendant's affidavit to the contrary, that she did know that her former husband was living in Los Angeles in 1942, because there are canceled checks in evidence made payable to her and drawn on different bank accounts. They were endorsed by her and the checks show Mr. Pemberton's business address. However, this fact, in and of itself, may not have been sufficient to justify the denial of the issuance of the order.

In *Long* v. *Long,* 76 Cal.App.2d 716 [173 P.2d 840], it was held that the doctrine of laches could not be invoked by a divorced husband to defeat his former wife's motion for issuance of execution to enforce a judgment for alimony where, notwithstanding the fact that his affidavit disclosed ownership of property of great value, he had systematically avoided payment of his obligation for 14 years, during which time the wife was without means to search for him, and where he had absented himself from the state to avoid the consequences of his disobedience of the court's order directing payment of his debt. (See, also *Troendle* v. *Clinch,* 74 Cal. App.2d 480 [169 P.2d 55].)

In *Saunders* v. *Simms,* 183 Cal. 167 [190 P. 806], at page 171, it is said that since the original judgment of the court directed the payment of money to the mother to assist her in the support of the child placed in her custody, and she having furnished such support from her own resources, she is clearly entitled to recover in this proceeding in her own name and for her own reimbursement.

While the question of the sufficiency of the showing is a close one, we are not prepared to hold that the trial court abused its discretion in granting the order to issue the execution.

■ The next complaint is that no credit is allowed for sums admittedly paid defendant by her former husband. There seems to be some merit to this contention. The checks made payable to defendant in 1942, were endorsed by her. They totaled approximately $275. Some bear the additional endorsement of the son. It is defendant's answer that she never received this money but it was paid over to the son for his personal benefit under the direction of the former husband and was not to apply on any judgment obtained by her. Apparently, the trial court believed her and disallowed these items. Under the well-known rule we cannot disturb this

finding. (*McClelland* v. *Shaw*, 23 Cal.App.2d 107 [72 P.2d 225]; *Chichester* v. *Seymour*, 28 Cal.App.2d 696 [83 P.2d 301].)

Order affirmed.

Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 2, 1950.