[Civ. No. 29221.   Second Dist., Div. One.   Nov. 9, 1965.]

VIVA LUNDGREN, Plaintiff and Respondent, v. HAROLD LUNDGREN, Defendant and Appellant.

Harold Drooz for Defendant and Appellant.

Joseph P. Argenta and F. Walter French for Plaintiff and Respondent.

LILLIE, J.—In July of 1948 plaintiff obtained (by default) an interlocutory judgment of divorce from defendant; thereunder the latter was ordered to pay $50 a week for the support of the parties' three children. No provision was made for alimony, nor was there any award to plaintiff of her share of the scant community property acquired during the marriage. The final judgment of divorce, entered in February of 1950, incorporated the above support provisions. In October of 1964, allowance being duly made for the fact that the children had since become emancipated (by marriage) or were otherwise self-supporting, the total accumulated sums for their support aggregated almost $21,000 of which only $1,284 had been paid by defendant over the intervening years. Learning that defendant had been named a beneficiary under the will of a deceased relative, plaintiff applied for a writ of execution, directed to the executor, as to those installments ($5,047.82) which had accrued within 10 years immediately last past; this was of right under section 681, Code of Civil Procedure (*Lohman* v. *Lohman,* 29 Cal.2d 144, 150 [173 P.2d 657]) and execution accordingly issued. The following day, October 7, plaintiff noticed a motion under section 685, Code of Civil Procedure, for permission to levy execution as to those installments accruing more than 10 years prior thereto. The matter having been submitted on

plaintiff's supporting declarations and defendant's in opposition,[1] the court granted plaintiff's motion and ordered execution to issue in the sum of $14,393.22, being the balance of $19,441.04 after the giving of credit for the amount ($5,047.82) realized by the earlier execution. The present appeal is from such order.

The governing statute (Code Civ. Proc., § 685) provides in part that a judgment "may be enforced or carried into execution after the lapse of 10 years from the date of its entry, by leave of the court, upon motion, and after due notice to the judgment debtor accompanied by an affidavit or affidavits setting forth the reasons for failure to proceed in compliance with the provisions of Section 681 of this code." Implicit in the above language, and the decisions so hold, is the requirement that the judgment creditor must have used diligence in attempting to enforce the judgment prior to the expiration of the statutory period (formerly five years but, since 1955, ten years). He is not required, however, to make a showing of *extreme* diligence but only *due* diligence. (*Shapiro* v. *Cahill,* 219 Cal.App.2d 772, 775 [83 Cal.Rptr. 601].) This distinction is recognized by defendant, his first assignment of error being that plaintiff has not shown " 'due diligence' in endeavoring to collect her judgment."

From the declarations, pro and con, the following facts emerge: During the marriage, defendant was employed in the "Grip" department of a motion picture studio. Shortly after the entry of the interlocutory judgment, he was admitted to a sanitarium as a tuberculosis patient. Until 1951 defendant was treated there, and at another sanitarium for pulmonary tuberculosis; upon his release, he again became employed at the motion picture studio earning a total salary of $13,686.59 during the four-year period ending in 1955. (As appears below, the studio at this time was beset by strikes.) In November of the year last mentioned, he was once more admitted to Olive View Sanitarium, remaining there until his discharge in July of 1957 as an arrested case eligible to receive disability insurance benefits under Social Security amounting to $101.30 monthly; such benefits have since increased to $108.

During defendant's four productive years (1952 through 1955) plaintiff resided in Banning. "[A]t least twice a month" on her "days off" she visited her mother in Los

---

[1] Although the order recites that "oral and documentary" evidence was presented, we have been furnished with no transcript of such "oral" testimony.

Angeles, and on "many of these occasions" the parties' younger son accompanied her and spent part of the day with his father. During this period, according to plaintiff, defendant paid her approximately $300 in sums averaging $20 per payment; he told her he was then giving her all "he could afford" because "the studios were having [labor] difficulties" which sometimes placed defendant "on call." Plaintiff declared that she did not "feel justified" in incurring court expenses and accepted defendant's statements. She further declared: "[N]o prior attempt has been made to satisfy said judgment or any part thereof because defendant has never owned any property, real or personal, and never had any money. Therefore, any attempt to levy execution would have been an idle act." Finally, there is this statement in her supplemental declaration: "After his release from the sanitarium my only information was that he worked off and on at different studios and continued the excessive use of alcohol which impaired his ability to maintain steady employment."

Defendant in his declaration denied the excessive use of alcohol. There is no denial by him, however, that, except for the limited funds contributed by him (totalling $1,284) and except for plaintiff's second marriage lasting one year, she was the sole support of the three children for the balance of the time material to this controversy.

Both sides agree that whether a creditor, such as the plaintiff here, has exercised due diligence is for the determination of the trial court whose decision will not be disturbed on appeal in the absence of a clear abuse of discretion. (*Georgison* v. *Georgison,* 43 Cal.2d 550, 552 [275 P.2d 3].) ▮ But if the facts show of a certainty that, had the judgment creditor exercised even slight diligence in making inquiry concerning the circumstances of the judgment debtor, he would have discovered property subject to execution, the exercise of sound discretion requires the court to deny the motion." (*Beccuti* v. *Colombo Baking Co.,* 21 Cal.2d 360, 363 [132 P.2d 207].) The above pronouncement governs here and accordingly the order under review must be reversed.

▮ The only basis urged by plaintiff in support of the trial court's decision is that she relied on defendant's repeated representations of his inability to comply with the support order and, even had she not done so, it would have been an idle act to levy on the wages earned by him during his productive years. As to the first of the above grounds, the

parties were then no longer husband and wife; the final decree of divorce, therefore, terminated the confidential relationship by virtue of which each party had the right to expect the other to exercise the highest degree of good faith in the course of their dealings. (*O'Melia* v. *Adkins,* 73 Cal. App.2d 143, 150-151 [166 P.2d 298].) As for the second, that execution prior to the expiration of the 10-year period would have been futile because defendant could not have made the payments, the same contention was made in *James* v. *James,* 84 Cal.App.2d 115 [190 P.2d 219], *Levene* v. *Levene,* 109 Cal.App.2d 155 [240 P.2d 730] and *Ford* v. *Ford,* 144 Cal. App.2d 677 [301 P.2d 450]. In *James* the court stated: "If it be conceded that it would have been an idle act for her to attempt to execute on her judgment during defendant's absence from California, as plaintiff now contends, it must also be conceded that for the succeeding six years . . . plaintiff failed to use the slightest diligence to uncover assets of defendant subject to execution." (P. 121); an affirmance of the order (denying execution) resulted. *Levene* took note of the wife's claim that "since it would have been an idle act to have sought execution during the five-year period such act was not required." (P. 157.) The order (denying execution) was affirmed without further comment on such contention.

In the *Ford* case, however, there was occasion to rule directly on the problem; a reversal followed of the order allowing execution under section 685. The trial court, it appears, ordered execution for the period from May 1936 to May 1944—the motion (under § 685) was filed in May of 1953. Said the court: "For the period prior to May, 1939, the propriety of this order depends upon whether respondent made a showing of due diligence for the period prior to 1939." (P. 684.) It was pointed out that between 1936 and 1943 respondent did nothing at all to enforce her judgment. Determined as insufficient were the reasons given by her: she lived 500 miles from appellant; she was without funds to pay for an investigation. The court then noted that no attempts were made by appellant to secrete himself; no contempt proceedings were instituted. Finally: "The averment in appellant's affidavit in the 1944 proceeding indicating that any prior attempt to collect would have been futile cannot serve to revive a judgment already barred. The inexcusable inactivity took place between 1936 and 1943. Respondent did not know until 1944 that any prior effort to collect would probably have been unsuccessful." (P. 685.)

The facts in our case are not exactly parallel to those in

*Ford,* but they are sufficiently related to be persuasive of the result we must reach. Endeavoring to distinguish *Ford,* plaintiff argues that she "relied on what appellant *then* told her and is not attempting *to give retroactivity to any statement appellant made some ten years later* which Presiding Justice Peters denounced in the *Ford* case." But defendant's statements (of his inability to pay more) were not made 10 years later; they were made, according to plaintiff's declaration, "[d]uring that period (1951 to 1955)" when defendant paid her $300 in various amounts. Too, plaintiff's declarations do not disclose in what year during that period such statements were made; in that regard, there was evidence that defendant earned $3,381.72 in 1952, $1,982.78 in 1953, and $4,364.00 in 1954, the first two of such years and most of the third being more than 10 years prior to the filing of the present motion (October 7, 1964).

Additionally, it is clear from the decisions that a moving party under section 685 must make at least a slight showing of some endeavor to collect a judgment. Except for her unfortunate reliance on the representations of a divorced spouse, plaintiff contented herself with information of a hearsay character to the effect that defendant, following his release from the sanitarium, "worked off and on at different studios. . . ." If she had made any investigation of the real facts, however, she would have learned that defendant was employed at one studio for the four-year period in question, earning a total salary of $13,686.59. We are not impressed with plaintiff's reply to this phase of the case, namely, that defendant might have been discharged by his employer "after the second or third levy"; it is beside the point determinative of this appeal, specifically, whether plaintiff used "due diligence" as required by the governing statute (§ 685).

We have examined the several cases relied on by plaintiff, but they are distinguishable factually. An example is *Serna* v. *Serna,* 91 Cal.App.2d 292 [204 P.2d 896], where an order denying relief under section 685 was reversed. Unlike the present proceeding, the wife made repeated demands for payment in accordance with the support order even though her husband had told her he had no money; too, he disappeared some time thereafter and she was unable to locate him. It further appears that the Serna child was still a minor, such minority properly provoking the court's declaration that "It is the intent of the law, and of good morals as well, that

everyone being able should pay his debts. This principle is peculiarly applicable to a debt arising from a decree awarding support for a minor child." (P. 294.) In our case, of course, we do not decide the merits of the circumstance (assertedly in mitigation) that plaintiff is not seeking funds for current support but reimbursement for funds already expended therefor. (Cf. *Di Corpo* v. *Di Corpo,* 33 Cal.2d 195, 201 [200 P.2d 529].) Other decisions discussed by plaintiff establish more than slight diligence on the creditor's part: *Long* v. *Long,* 76 Cal.App.2d 716 [173 P.2d 840] (contempt proceeding commenced); *Troendle* v. *Clinch,* 74 Cal.App.2d 480 [169 P.2d 55] (debtor discharged after supplementary proceedings and records of tax assessor subsequently examined each year); *Pemberton* v. *Pemberton,* 95 Cal.App.2d 472 [213 P.2d 118] (criminal action filed for nonsupport). The same is true of the remaining cases all of which show at least some affirmative action by the creditor establishing due diligence.

Finally, although unnecessary to do so, we decide defendant's remaining point that even if due diligence was established, it was highly inequitable and therefore, a clear abuse of discretion for the trial court to grant respondent's motion under the circumstances which then existed. Defendant's declaration states, in part, that he is "58 years old, . . . 6 ft. 2 in. tall and weigh[s] approximately 105 lbs." Further, he is totally disabled and his "only income is the $108.00 per month" received from Social Security. Although there is no proof whatever of the amount of his legacy, it is also asserted that the balance for which execution was ordered to issue (under § 685) represents the defendant's entire inheritance from his deceased relative. Facts of a similar nature, it has been held, "do not constitute valid reasons why the order complained of should not be made. Those reasons could with equal propriety be set up against the issuance of any execution. But no one would make that contention." (*Peers* v. *Stoll,* 32 Cal.App.2d 511, 513 [90 P.2d 119].)

The order is reversed.

Wood, P. J., and Fourt, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 6, 1966.